JUDGE GOFER,
delivered the opinion of the court.
February 24, 1876, Pfieffer sold and conveyed to Mertz, for the recited consideration of $8,400, $3,000 in hand and two notes of $2,700 each, payable in one and two years, a tract of land situated in Bullitt County. September 12th of that year Pfieffer assigned one of the notes to Kilgus and Braur as collateral security for debts due by him to them respectively of about $800. November 4th of the same year Mertz reconveyed the land to Pfieffer; and December 20th Pfieffer sold and conveyed it to Summers, and on the same day, by an appropriate indorsement on the margin of the record of the deed to Mertz, attempted to release the lien retained therein to secure Mertz’s notes to him.
The deed from Mertz to Pfieffer “ Witnesseth, that the said first party, in consideration of the sum of $1, cash in hand paid, and the further consideration that the second party did heretofore convey to (the) first party the land hereinafter described, with the understanding between them that on demand said first party would reconvey same back to (the) second party, and there was really no consideration for said conveyance from (the) first party to (the) second party, and now said second party demands that (the) first party shall reconvey same back to him; now, therefore,” etc.
‘Summers agreed to pay to Pfieffer $6,000, $1,500 cash in hand, and the residue in three equal annual installments. He, however, only paid $1,000 in hand, and then, as he says, discovering that J. C. Johnson, trustee for M. L. Harrison, *451 claimed a lien on the land on account of an exchange of real estate between Johnson and Pfieffer, in which Johnson conveyed to Pfieffer the land Pfieffer conveyed to him. Summers refused to pay to Pfieffer any more of the purchase-money, but with his consent paid it to Johnson to the amount of $5,097, a little more than the balance due on the purchase.
It is not alleged that Summers, at any time before he completed the payment of the purchase - money to Pfieffer, had notice of the transfer of the note to Kilgus and Braur, nor does the evidence disclose any such notice.
The question is, which of the parties, Kilgus and Braur on the one side, or Summers on the other, shall sustain the loss which, on account of the insolvency of Pfieffer, must be borne by one or the other?
The assignment of a debt carries with it a vendor’s or mortgage-lien by which the debt is secured. This has been so often decided by this court as to render the citation of authority unnecessary. And where several obligations are secured by a common lien, the assignment of a portion of them operates to transfer the lien pro tanto. (McClanahan v. Chambers, 1 Mon. 45.)
The assignment to Kilgus and Braur therefore invested them with a lien on the land, for a part of the price of which the note was given, and they had a right to its enforcement, unless they have lost it in consequence of something that transpired after they received the note. They have not done any act that had that effect, and if the lien has been lost, it was without fault on their part.
On the other hand, Summers purchased and paid for the land without knowledge, express or presumed, that the notes had been assigned, and is also without fault, unless, as contended, he was bound at his peril to know whether the notes were still held by Pfieffer, had been surrendered to Mertz, or were in the hands of assignees.
*452 The recitals in the deed of Pfieffer,to Mertz gave Summers notice that a lien had once existed, but the reconveyance to Pfieffer, especially in connection with the recitals in the deed, showed that, as between the parties, the notes were canceled, and this conclusion was still further strengthened by the indorsement made on the deed from Pfieffer to Mertz on the day on which Pfieffer conveyed to Summers. So far as Pfieffer was concerned his conveyance to Summers would of itself have canceled the lien as to Summers, although as between Pfieffer and Mertz the notes might not have been canceled.
The note being satisfied, and the lien by which it was secured canceled, as between Pfieffer and Mertz and Kilgus and Braur on one side, and Summers on the other, claiming under Pfieffer, the former have the prior equity, but in all other respects Summers occupies the more favorable attitude, unless it was his duty to ascertain whether the note had been assigned before the reconveyance to Pfieffer.
He is a purchaser for value, without notice of the existence of the lien, for although he knew a lien once existed, he also knew it had been released in the manner prescribed by law by the only person who, to his knowledge, had any interest in it, as well as by the deed from Mertz to Pfieffer. He had no notice that a part of the lien had been passed to others by the assignment of the note. He has the legal title to the land, and is defendant in the action. On the other hand, Kilgus and Braur are not purchasers, but creditors holding the lien and note as security for pre-existing debts, and are under the necessity to ask a court of equity to aid them.
Other things being equal, purchasers are favored, both at law and in equity, above creditors, and so also the condition of the defendant is best. The chancellor prefers to allow a loss to rest where he finds it rather than to transfer it to another equally entitled to his consideration; he prefers to allow rather than to inflict injustice, and to abstain from act *453 ing at all when all he can do is to shift a loss from one innocent person to another.
Kilgus and Braur have but an equity as against Summers. True, the note has been assigned to them, but merely in pledge as security for their pre-existing debts. They are not purchasers for value, and Pfieffer is the owner of the notes, and the equity of the pledgees can not override Summers’s junior equity to which he has united the legal title, without notice of the equity, unless it was his duty to make inquiry whether the notes had been assigned, and he is therefore to be taken to have had constructive notice.
Pfieffer knew the note had been pledged, and as he was the payee, Summers knew that Pfieffer could inform him whether the note had been assigned or not. Was it his duty to inquire ?
The conveyance from Pfieffer to Mertz was made in February, the reconveyance on the 4th of the ensuing November, and the conveyance to Summers and formal release of the lien on the 20th of December following. When Mertz reconveyed to Pfieffer he was entitled to the surrender of his notes, and it was natural to suppose that if notes had been given, they had been surrendered or destroyed, but the more natural conclusion, from the recitals in the deed, would have been that no notes had ever been executed.
The statute gives the maker of a note the benefit of any defense he acquires against the payee or any intermediate holder before notice of the assignment, so that a payment of, or agreement to cancel the note made to or with the payee, before notice of the assignment, is good against the assignee, though the assignment was previously made.
It would seem that it would be quite as reasonable to require, in such a case, that the obligor should ascertain at his peril whether the note had been assigned, as to require a purchaser in a case like this to make inquiry whether a remote *454 vendor, who had released his lien, had previously assigned the note. The statute was no doubt framed on the idea that an obligor might assume, until notified to the contrary, that the note was still held by the payee, and that the interest of the greatest number would be subserved by that rule. We not only have the statute as evidence that such was the opinion of the legislature by which it was enacted, but its continued existence proves that such has been the opinion of succeeding legislatures.
If that rule be just and equitable as between the makers of notes and assignees who pay value for them, is it not just and equitable in a case like this?
If the maker of a note may justly be allowed to assume, until notified to the contrary, that the payee still holds the note, and make payments on it to the prejudice of dona fide assignees for value^may not a purchaser of land be, with equal justice and reason, allowed to assume without inquiry that a remote vendor who has released his lien was then the holder and owner of the notes, or that 'they had been paid or canceled ? and especially in a case like this, in which the original vendor has received a reconveyance of the land, which operated to cancel the lien he theretofore held by merging it in the greater estate, and when it was reasonable to suppose that the reconveyance would not have been made without a surrender of the notes.
These views seem to us to be just and reasonable, and to be absolutely necessary to avoid the most serious embarrassments in the transfer of real estate. If they be not correct, then every vendee of land which has been previously encumbered by liens for purchase-money or by mortgage, must, at his peril, ascertain whether all prior vendees or mortgagors, within the period of limitation, have paid their purchase-money or mort- . gages, although they may find that the vendors or mortgagees have released their lien on the record.
*455 Thus far we have treated the ease as if the release of the lien, entered on the margin of the record of the deed, was a mere private memorandum, entitled to no more effect than a simple declaration by Pfieffer to Summers that he released the lien.
Section 12 of chapter 24, General Statutes, provides that “ Liens, by deed or mortgage, may be discharged by an entry acknowledging satisfaction of the same on the margin of the record thereof, signed by the person entitled to the same, or his personal representative, and attested by the clerk or his deputy, which, in case of a mortgage, or deed of trust, shall have the effect to reinvest the title in the mortgagor or grantor, or person entitled thereto. This provision shall not be held to change the existing law, if no such entry be made.”
This provision indicates that it was the intention of the legislature that a release, made in conformity to the statute by the proper person, should have the same effect as a deed of release, and that it should furnish an abiding evidence of the extinguishment of the lien; and we are of the opinion that, fraud aside, it is conclusive when invoked by a subsequent vendee for his protection against liens which it purports to release.
But the important question remains, who is the person authorized to make the release? The statute says, “the person entitled to the lien or his personal representative.” Who is entitled to the lien within the meaning of the statute? We have seen that the lien passes by the assignment to the assignee, and he thereby becomes entitled to the benefit of it. But a release by the assignee would of itself afford no evidence that the debt had been discharged, because the record would furnish no evidence that he was assignee. The only object the legislature can have had was to provide a convenient mode for perpetuating evidence of the discharge of the lien, and that object will be wholly defeated if it be held that by the phrase “ the person entitled to the lien ” is meant the *456 person who may for the time being hold the lien-debt by assignment. The only construction we can give is to hold that by “ the person entitled to the lien ” is meant the person who appears on the record to be entitled to it; i. e. the vendor or mortgagee, or, since #the act of March 18, 1876 (Bullitt and Feland’s Statutes, 59), providing for the registration of notes, the person who appears from such register to be the assignee.
We therefore hold that Summers, having purchased and paid for the land, without notice of the assignment of the note to Kilgus and Braur, is protected, against the lien asserted by them, by the release indorsed on the record by Pfieffer.
To construe the statute to mean that persons to whom a lien is given can only release it while they are the owners of the debts secured by the lien would not only be contrary to what we think was the evident intention of the legislature, and render the statute of little value, but would greatly embarrass the transfer of real estate, and lead to frauds quite as great and frequent as can result from the construction we have given it.
Under this construction notes secured by mortgage, deed of trust, or vendor’s lien, may be sold, and the lien released to the prejudice of bona fide purchasers; but on the other hand, under a contrary rule, such notes may be assigned, the lien released, and the land sold to innocent purchasers, who may be required to pay a part or the whole of the purchase-money again. But now, under the statute supra, assignees of such notes may protect themselves by requiring their assignors to register the assignment.
For the reasons given we are of the opinion that the court erred in adjudging in favor of the holders of the note, and the judgment is reversed, and cause remanded with directions to dismiss the petition.