## Chesapeake & Ohio Railway Company, et al. v. Williams.

(Decided November 25, 1913).

### Appeal from Franklin Circuit Court.

1.  Trial—Trial by Court—Finding—Effect as Verdict.—Where the law and facts are submitted to the trial court without the intervention of a jury, his finding is equivalent to the verdict of a properly instructed jury, and any defect in the petition is cured thereby.

2.  Carriers—Carriage of Goods—Connecting Carriers—Loss or Injury to Goods—Liability.—Where two or more carriers are involved in a shipment of goods, and the shipper or consignee shows that a certain quantity of goods was delivered to the initial carrier and a less quantity received from the delivering carrier, he makes out a prima facie case against each carrier, and it then becomes incumbent upon each to show that the loss or damage did not occur on its line, or if occurring on its line was due to some cause for which it was not responsible in law.

3.  Carriers—Connecting Carriers—Loss of Goods—Liability—Evidence.—In an action by a consignee against two connecting carriers to recover for shortage of weight in various shipments of coal, evidence examined and held to sustain a verdict in favor of plaintiff.

SHELBY & SHELBY, IRA JULIAN, R. L. NORTHCUTT for appellant, Chesapeake & Ohio Railway Company, et al.

McQUOWN & BECKHAM, CHARLES H. MOORMAN and BENJAMIN D. WARFIELD for appellant, Louisville & Nashville Railway Company.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, E. M. Williams, brought this action against defendants, Chesapeake & Ohio Railway Company and

Louisville & Nashville Railroad Company, to recover the sum of $331.43 on account of alleged shortage in the weight of coal transported by them to Frankfort, Kentucky, from points in West Virginia and Eastern Kentucky. The law and facts were submitted to the court, and judgment rendered in favor of plaintiff against both defendants. The railroad companies appeal.

There are 38 carloads of coal involved. The bills of lading issued for these cars show the weight of the coal therein. In each bill of lading Frankfort is designated as the destination of the freight. The bills of lading contain the following provisions:

"Received from ———————— (shipper)' by Chesapeake & Ohio Railway Company the property described below in apparent good order except as noted (contents and conditions of contents of packages unknown) marked consigned and destined as indicated below, which said company agrees to carry to the said destination, if on its road, otherwise to deliver to another carrier on the route to said destination."

The bills of lading also contain the following provision:

"No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee."

The Chesapeake & Ohio Railway Company was the initial carrier, and delivered the coal in question to the Louisville & Nashville Railroad Company at Lexington. The latter company delivered it to plaintiff at Frankfort. The initial carrier transported the coal for a distance of from 150 to 200 miles; the connecting carrier for a distance of 29 miles. The cars of coal were in the custody of the initial carrier for periods varying from 16 to 30 days. After being turned over to the connecting carrier they were delivered to the consignee within a few days. When the coal was received by plaintiff he in many instances noticed evidence of the cars having been robbed, and reported this fact to the agent of the Louisville & Nashville Railroad Company. In some instances the coal was reweighed, while in others that company refused to reweigh the coal. Where the coal was reweighed it was considerably less than the weight fixed in the bill of lading. Plaintiff also weighed the coal and found a shortage in each of the cars referred to. When he weighed the coal it was not weighed in the

car, but in carts. In some instances it was shown that after the cars were delivered to plaintiff they remained on the switching track in his yards for four or five days. The railroad companies also introduced evidence to the effect that considerable loss would result from evaporation. This evidence was given by men who had made experiments with coal taken from the western coal fields of Kentucky. None of the experiments were made with coal from the eastern coal fields. After delivering the coal to plaintiff the Louisville & Nashville Railroad Company collected the freight based on the weights fixed in the original way bill issued by the Chesapeake & Ohio Railway Company.

Since the law and facts were submitted to the trial court without the intervention of a jury, we conclude that any defect in the petition was cured by his finding, which was equivalent to the verdict of a properly instructed jury. Bell v. Wood, 87 Ky., 56, 7 S. W., 550; Kahn v. Rogers, 19 Ky. L. Rep., 1806, 44 S. W., 431.

For the defendant, Chesapeake & Ohio Railway Company, it is contended that it contracted to deliver the coal in question only to its destination if on its own line, and if not on its line, to a connecting carrier; that by the terms of the contract it was not liable for any loss or damage not occurring on its line; that where the transportation involves numerous carriers, and it is shown that the goods were in good condition at the beginning of the route, but were damaged on their arrival, an action may be maintained against the last carrier, as the law presumes that it received them in good condition until the contrary is shown; that where the last carrier proves that the goods were not damaged in its possession then the burden of proof shifts to the next preceding carrier to acquit itself of the presumption that the goods were damaged on its line. Thompson on Negligence, section 6569; White's Supplement to Thompson on Negligence, section 6569.

On the other hand it is the contention of the Louisville & Nashville Railroad Company that the burden was on the Chesapeake & Ohio Railway Company to prove that it delivered all the coal that it received, and having failed in this respect that company is liable as the initial carrier, unless the loss is shown to have otherwise occurred. In this connection it is insisted that the proof utterly fails to show that the initial carrier delivered all the coal to the Louisville & Nashville Railroad Company.

L. C. R. R. Co. v. Stevens, 29 Ky. L. Rep., 1079, 96 S. W., 888.

It is well settled that the carrier of goods is liable for all loss or injury not due to the act of God or the public enemy or the public authority, or to the inherent nature or qualities of the goods, or the act or fault of the shipper, and even in the excepted cases a carrier may become liable if, by the exercise of reasonable care, he could have avoided or lessened the loss or damage. C., N. O. & T. P. Ry. Co. v. Rankin, 153 Ky., 730; Hutchinson on Carriers, 3rd Ed., section 265; 6 Cyc., 376. Plaintiff in this case showed the quantity of coal delivered to the initial carrier and the quantity received from the connecting carrier. Had there been but one carrier this evidence would have been sufficient to make out a *prima facie* case of liability, and impose on the carrier the burden of showing that the loss was due to some cause for which the carrier was not responsible. C., N. O. & T. P. R. Co. v. Rankin, *supra*; Galveston, Harrisonburg & San Antonia Ry. Co. v. Wallace, 223 U. S., 481, 56 L. Ed., 516. The reason for the rule is that the carrier being in possession of the goods, it and not the shipper or consignee is in a position to show how the loss or damage occurred. Manifestly, therefore, if only one carrier were concerned, a failure on the part of the shipper to show how the loss or damage occurred would not defeat his recovery. We are unable, therefore, to perceive on what just ground a distinction can be made in cases where two or more carriers are involved; since the difficulty of the shipper's or consignee's showing how or on which line the loss or damage occurred will be all the greater, and in many cases practically impossible. We have held in a suit against the initial carrier that it was incumbent on the carrier to show that the loss or damage did not occur on its line. On the other hand, many of the courts have held that a suit may be maintained against the delivering carrier on the presumption that the loss or damage occurred while in its possessison. After carefully considering the question, we conclude that where two or more carriers are involved and the shipper or consignee shows that a certain quantity of goods was delivered to the initial carrier and a less quantity was received from the delivering carrier, he makes out a *prima facie* case against each carrier, and it then becomes incumbent upon each to show that the loss or damage did not occur on its line, or if occurring

on its line, was due to some cause for which it was not responsible in law. In the present case the coal was weighed by the initial carrier. Some of the cars delivered were weighed by the delivering carrier and showed a shortage. In some instances the cars had the appearance of having been robbed. While defendants did show that some of the cars remained on plaintiff's side track and in an exposed position for four or five days, we cannot say that the finding of the trial court was flagrantly against the evidence on this question.

To escape liability defendants introduced evidence to the effect that there was considerable evaporation and loss of weight in coal shipped from mines in Western Kentucky. This loss was due to the dampness of the coal, and varied according to the time that the coal was taken from the mine. There was no evidence that the same condition existed in the eastern coal fields of Kentucky and in the coal fields of West Virginia. Nor was there evidence showing at what time the coal shipped to plaintiff was taken out of the mine. It cannot therefore, be said that the trial court's finding on this question was flagrantly against the evidence.

Judgment affirmed.