# Weil et al. v. B. E. Buffaloe & Co.
# F. K. Pence Tile Works v. Weil et al.

(Decided June 23, 1933.)

(As Modified on Denial of Rehearing Dec. 15, 1933.)

674

EATON & BOYD for appellants.

WHEELER, WHEELER & SHELBOURNE, W. F. McMURRY, Jr., C. C. GRASSHAM, ROY GARRISON, R. L. MYRE, and WESTON, GATES & ASHBURY for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and reversing in part.

A voluminous record is presented containing the consolidation of a number of suits, intervening petitions, and cross-petitions. Some of the parties are here as appellants and, of course, others as appellees. Some occupying those stations are cross-appellants and cross-appellees; the whole creating difficulty of designation other than by their names.

The case arises from the erection of the Irvin Cobb

Hotel at Paducah. Adolph Weil, the then owner, has conveyed an undivided interest to Henry Weil, who is also a party to the appeal. The general contractor was B. E. Buffaloe & Co., a corporation. Other contracts were made directly by the owner for certain portions of the work, and numerous subcontracts were entered into with Buffaloe & Co. The case was elaborately prepared and submitted to the master commissioner. His report reflects great care and unusually clear and logical conclusions. The case was briefed before him, and he made a number of personal inspections of the buildings. Exceptions to his report were argued before the judge, who overruled them except in two particulars, which offset one another. We have gone into the evidence, and, where it does not clearly appear that the findings of fact are correct, there is raised only a doubt, and that doubt has been resolved in favor of supporting the findings of the trial court. That is the usual rule, but in this case, where there has been such an exceptionally complete hearing below, there is all the more reason for applying the rule.

■ It is submitted by Weil that a demurrer to the answer and cross-petition of Buffaloe & Co. should have been sustained because the contract filed as an exhibit contradicted the allegations, in that the pleading showed that the petitioner had not complied with the terms of the contract nor brought itself within certain conditions precedent to recover under it. He further claims that the material breach of the contract there disclosed had excused further performance on his part, as it was an indivisible one. The claimed deficiency in the petition is in its essence that the contract provided the contractor should pay for all material and labor and save the owner harmless on that account; and also that, before final payment should be made or any right of action should accrue against the owner, the contractor should furnish satisfactory evidence that the work was free of claims and liens. It was also argued that before final payment there must have been a final approval of the work by the architect and a certificate to that effect furnished the owner. These things, it is said, are conditions precedent to recovery, and it was not alleged that they had been performed. The contract provided for the payment of 90 per cent. of the work and material as the job progressed. The plead-

ing alleged that all the work had been done and the structure completed and turned over to the owner for occupancy; that the extra work in the sum of $17,043.72 had been performed. It set up a justification for not getting the architect's approval, and alleged that the contractor had paid all claims and demands ratably, and was unable to complete their payment because of a lack of funds, but that it would satisfy them contemporaneously with the payment to it by the owner of what was owing under the contract, and that the owner would be furnished with the receipt in full and discharged from all liability when that was done. It appears that some of the claims were paid directly by the owner, and a willingness was expressed by the contractor for the owner to satisfy and pay the rest of them out of the balance owing to the general contractor.

The consideration to be given the pleading must be under the rule that substantial performance of a building contract will support a recovery of the entire contract price, where it was undertaken to be performed in good faith; damages for incompleteness or defects being allowed and deducted. Cassinelli v. Stacy, 238 Ky. 827, 38 S. W. (2d) 980. Another rule to be borne in mind is that, where a party is prepared to clear an incumbrance out of the purchase price coincidentally with the closing of the transaction, so that the other party would acquire a clear title, no complaint will be entertained that the incumbrance was not removed earlier. Cook v. Johnson, 241 Ky. 452, 44 S. W. (2d) 547. We may pass the question of sufficiency of the pleading in the light of those doctrines and the application of the rule that a pleading will be regarded as good after judgment if it contains allegations from which every fact necessary to maintain the action or establish a defense may be fairly inferred; that is, the curing of the defect by judgment. Rogers v. Felton, 98 Ky. 148, 32 S. W. 405, 17 Ky Law Rep. 724; Chesapeake & O. Ry. Co. v. Williams, 156 Ky. 114, 160 S. W. 769, 49 L. R. A. (N. S.) 347.

Counsel for Buffaloe & Co. point out what they regard as an error of $1,000 in the judgment due to miscalculation or a clerical misprision. It is agreed that the original contract price with Buffaloe & Co. was $360,688, and that there had been paid on this $331,648, leaving a balance of $29,020. In the original judgment

this sum was used as the basis for adding allowances to the contractor for extras, damages, etc., amounting to $8,267.64, as listed. This would make $37,287.64. But the judgment erroneously recited it to be $37,508.42. In a modified or corrected judgment, the balance due on the original contract is erroneously stated to be $30,-020. Here the item of allowance for gutters and elevator locks is correctly shown to be $555.50, whereas the original judgment erroneously showed these items to be $1,555.50. There is also here added $220.78 as an allowance for extra pipe trenches. As thus corrected, the total is $37,508.42, which was the sum awarded in the original judgment. The error in the items of gutters, etc., is apparent from the record, and it is clear that the items of $220.78 was erroneously omitted from the first judgment. It seems also apparent that, in using $30,020 in the last judgment instead of $29,020, a clerical error was made and that the correct sum to be adjudged against Weil is $36,508.42, consisting of the balance of $29,020 and extras of $7,488.42 detailed in the modified judgment. There was no change made in the judgment which allowed a total of $6,431.30 in favor of Weil on account of damages claimed against the contractor. This is a net award of $30,077.12 instead of $31,077.12 against Weil. The record manifests this as a clerical misprision, which may be corrected by motion (section 517 et seq., Civil Code of Practice) and does not require a reversal of the judgment. However, the judgments in favor of the subcontractors and materialmen against Buffaloe & Co., secured by different liens and assignments, are to be credited when satisfied by Weil. That is the order of court and, while Weil is not specifically directed to pay them, the authority is sufficiently implied.

■ The building was turned over to the owner on April 29, 1929, with a written agreement that, although it had not been fully completed, the building would be finished according to the terms of the contract. On May 1st a long list of claimed defects and unfinished parts of the building was furnished the contractor. It is submitted by Weil that nothing was done to remedy these things. The evidence is conflicting. The same is true in respect to certain extra work. It is shown by what is termed "change sheets" that these items were approved by Hutchinson, who was the owner's repre-

sentative or engineer of construction. He testified, however, that he had initialed these papers only in an effort to compromise the difference when the contractor was claiming he had performed the entire contract. The evidence in behalf of the contractor indicates that this was done during the course of construction and as each extra item was furnished. Some of them were agreed to and memoranda signed by Weil personally. All of these detailed items were passed upon by the master commissioner and reviewed by the trial judge. We are not able to say that the conclusions were erroneous.

■ The contract with Buffaloe & Co., provided for the completion of the building on February 28, 1929, and, if it should be turned over to the owner before that time, the contractor was entitled to $100 a day by way of a bonus. If it was not finished on time, the owner was entitled to retain $100 a day from the contract price for each day of delay. As stated above, the building was turned over on April 29th, which was sixty days late. On that account Weil asserted a claim for $6,000. Buffaloe & Co. denied liability for the delay, and attributed it to the contractor who installed the plumbing and heating under a separate contract made directly with the owner. Also to the unprecedented rains at the beginning of the work and a failure by the architects to furnish certain detail plans on time. Buffaloe & Co. asserted a claim against the owner in the sum of $6,592.68 as damages suffered by it on account of the delay caused by the architect and plumbing and heating company. A little more than half of this was due to additional overhead expenses which would not have been incurred but for the interference. An almost equal sum was asked because of extra labor in the shifting of crews and other things arising from an inability to synchronize the work. The owner denied all this, and undertook to prove that Buffaloe & Co. early fell behind with its schedule because of insufficient equipment and inexperienced workmen, and that he had not been interfered with in any way by the other contractors. Much evidence was heard on this issue. It seems sufficient to say that the commissioner found, and the court adopted the finding of fact, that the plumbing and heating company had caused a delay of possibly six weeks, and the unprecedented rains had delayed the work in the beginning an additional twenty days. For this latter ac-

count Buffaloe & Co. should have been allowed twenty days' extension of time on its contract. On November 26th Buffaloe & Co. wrote a long letter to the architects complaining of the delay being caused by the plumbing and heating company, and asked for an extension of time. No answer was ever given to this letter, but a representative of the architects verbally advised that they had taken up the matter. Complaint was made also to the owner's superintendent, and Weil himself several times advised Buffaloe & Co. not to worry about the delay, as it was the other contractor who was holding back the job. The master commissioner rejected both the owner's claim of $6,000 as liquidated damages, and the contractor's claim for $6,592.68 as damages incurred on account of being delayed. But the court allowed the contractor $1,250 on its claim. Both parties are objecting to this part of the judgment, and argue it is inconsistent with the findings of fact. It does not seem so to us. The contractor was excused from liability for the penalty on account of the sixty days' delay upon the ground that forty days was due to the plumbing and heating company, who was wholly responsible to the owner and who should be regarded as his agent; and the twenty days was due to the rain, for which no one was accountable in damages. The court concluded from the evidence that $1,250 of the additional expense of the general contractor was due to the forty days' delay caused by the plumbing and heating company. The court was not bound to accept the evidence that the entire additional expense was by reason of that delay. We cannot say that it was an improper allowance under the evidence.

■ The owner first claimed $5,000 and later $20,000 damages against Buffaloe & Co. on account of defective construction of the roof garden, because of which it leaked badly and had damaged the interior of the building and its furnishings. There is no doubt about the roof leaking, but there is doubt as to the cause. The contractor maintained that it came about through an inherent defect in the plan. It showed that there was much confusion and conflict in the plans and specifications, and that the roof garden had been built according to the interpretation made by the owner's superintendent. A number of witnesses, experienced and qualified in reading and applying plans and specifi-

cations, testified to their confusion. On the other hand, the conflicts were explained away, says the owner, by reference to certain elucidating details and provisions as to what should be followed in case of conflict. The owner was allowed $3,000 in damages on this account. He is insisting here that there was no evidence to support the award of that sum, and that under the proof he was entitled to at least $10,000, which was the lowest estimate of damages placed by the witnesses. The contractor presented no evidence as to the amount of damages, contending always that it was in no way responsible for the condition. In addition to having the evidence before him, the commissioner made several inspections of the building during rainfalls, and concluded that this part was not constructed according to the plans and specifications, and that $3,000 fairly represented the damages on this account. This was accepted by the trial court. The estimate of total damages did not have to be accepted unequivocally. There were some other allowances made for other leaks and resulting damages, about which no complaint is registered with us. Upon these findings of fact we cannot say that the judgment was wrong.

■ The contract called for tuck pointing of the brick work, which we understand to be going over and pointing up the joints and making them neat. A claim of $2,500 was asserted by the owner upon the ground that this work had not been done. The overwhelming weight of the evidence sustains the findings of the trial court that the work was all properly done and that the claim should be disallowed.

■ Weil asked $2,500 against Buffaloe & Co. for expenses incurred by him in defending claims against the property asserted by subcontractors and materialmen. Buffaloe & Co.'s contract provided that it should pay all such claims and indemnify the owner against them, and that it would reimburse him for any and all costs or expenses which he might incur by reason of such claims. The commissioner allowed nothing on this item, but the court awarded $1,250 in favor of the owner. Buffaloe & Co. maintains that the allowance was error, as it stood willing at all times to defend against these claims and to satisfy those for which there was no defense whenever Weil should comply with his contract and pay what was due it. Grouped with

this item is the argument that the court erroneously apportioned the court costs of the various intervening claims in the consolidated action. The costs in each of these suits was considered and adjudged separately and distributed in fractional parts. The major portion of the costs thus apportioned, fell upon Weil. He is insisting that it was error to charge him with any part of them. It was found that Weil was indebted to Buffaloe & Co. in a considerable sum, for which it had become necessary to sue in order to recover. This liability to the general contractor involved most of the materialmen's liens, but not all of them. The general contractor had bound itself to take care of these claims and to make defense against those which were improper. In fact, it appears that there was some union of legal services rendered by counsel for both of these parties in opposing some of the claims. By reason of this, as will appear later in the opinion, Weil secured a deduction of $1,000 on account of the ornamental tiling being off color. Failure to pay these claims by Buffaloe & Co. was due to the failure of Weil to pay him according to the contract. Exactness could hardly be expected in fixing these costs. It seems to us, after going into the matter, that the division among the parties and the amount awarded Weil under the indemnifying clause of the contract with Buffaloe & Co. is about as fair as could be arrived at.

H. S. Sutton was a subcontractor under Buffaloe & Co. to do the plastering. Because the bathtubs furnished by the owner under an independent contract were slightly shorter than the plans called for, it became necessary to thicken the plastering about them in order to fit the tiling. There was some other extra work called "scratch coating." Sutton's intervening petition set up a balance due under his contract, which includes charges for this extra work of $1,230.96. He asked judgment against both Buffaloe & Co. and Weil for the debt and that he be subrogated to Buffaloe & Co.'s mechanic's lien. An amendment set up a new and separate contract made directly with Weil through his superintendent to pay for this extra work. There is really no contradiction that Weil's superintendent ordered the work to be done. It was necessary to a completed job, and Buffaloe & Co. was not responsible. Some question is raised in brief as to the correctness

of this amount because some of the bathrooms had shower baths instead of tubs, and this thickening of the plastering could not have been done in those rooms. The evidence details the work, and recites that in some of those bathrooms where there were tubs no extra plastering was necessary, but for other reasons extra plastering was necessary in some of the shower rooms and in other parts of the building, all of which had been done under the direction of the owner's superintendent. The commissioner and the trial court found that extra work to the amount of $1,230.96 was done under the direction of the owner, and that Buffaloe & Co. was not responsible for it because of any fault of its own. A personal judgment was therefore rendered against Weil under his implied contract to pay for these extras. Judgment was also given against Buffaloe & Co., which had ordered the work done; and in turn the item was included in the $30,077.12 judgment which Buffaloe & Co. secured against Weil. To secure his claim against Buffaloe & Co., Sutton has an attachment on the fund due it by Weil, but he has no mechanic's lien on the property. We see no reason for disturbing these judgments. Weil will not have to pay, nor can Sutton receive pay, twice. The item is one of those which Weil may pay direct to Sutton and take credit for it on Buffaloe & Co.'s judgment, as is related above. If in the distribution of the $30,077.12 among Buffaloe & Co.'s creditors entitled thereto, according to their respective rights and liens, Sutton's assignee does not receive full satisfaction, he has his personal judgment against Weil and Buffaloe & Co. for the deficit.

■ Judgment was rendered in favor of the Higgins Manufacturing Company for $933 against Weil and also Buffaloe & Co. as being the difference between the cost of wood and metal screens. It appears that this change in material was outside of the specifications of the original contract with Buffaloe & Co., so that company is not chargeable with this difference, except as an agent of Weil ordering the work done. The contract with Higgins Manufacturing Company called for wood screens. The change was authorized by the owner's superintendent, and he received the benefit of the difference in the material. Weil insists he is not liable. It simply added that much to the cost of the building, and the owner's approval of the change constituted an

implied contract to pay the difference. 9 C. J. 840. No mechanic's lien was adjudged because of the failure to perfect it in time, but an attachment against Buffaloe & Co.'s interests was sustained, although subordinated to other liens. Buffaloe & Co. make no complaint as to this item. This item is in the same class and condition as that of Sutton's assignee. It was also included in the extras aggregating $7,488.42, hence in the net judgment of $30,077.12 in favor of Buffaloe & Co. When it is paid by Weil to Higgins Manufacturing Company, credit will be taken on that judgment as authorized by the court.

The Tri-State Ornamental Plastering Company intervened and set up an assignment to it by H. S. Sutton on account of materials furnished him for this work in the amount of $1,500. This was an assignment of Sutton's claim against Buffaloe & Co. It was accepted by that company, which in turn assigned its claim against Weil for the same amount to cover it. There was another assignment by Buffaloe & Co. to the Tri-State Ornamental Plastering Company for $335 of the amount owing the assignor by Weil, and Weil was directed to pay both sums according to the assignments and charge them to Buffaloe & Co. Judgment was rendered in favor of this claimant for $1,500 against Sutton, Weil, and Buffaloe & Co., and for $335 against Buffaloe & Co. and Weil only. Complaint is made by Weil that no summons was issued against him on this intervening petition, and it is argued that the court was without power to render judgment against him. The only judgment sought against Weil was by virtue of the assignments of Sutton and Buffaloe & Co. of a part of the balance due them by Weil. We think the judgment was proper under the provisions of section 20, Civil Code of Practice, authorizing the continuance of the prosecution of a cause in the name of the assignor where the assignment of a fund is made or a right of action transferred during the pendency of a suit. In adjudging the rights and priority of the parties, the judgment refers to the right of this company as being a lien, and Weil insists that no lien had ever been asked or awarded. Buffaloe & Co. had a mechanic's lien on the property, and the assignment of a chose in action secured by lien also assigns the lien. Summers v. Kilgus, 14 Bush, 449; McGowan v. Wells'

Trustee, 184 Ky. 772, 782, 213 S. W. 573. This judgment was proper.

■ The Mechanics' Trust & Savings Bank had filed its petition against Sutton, Buffaloe & Co., and Weil to recover on a note of $6,000 executed to it by Sutton and secured by the assignment of funds due him by Buffaloe & Co. An attachment was issued. This case was consolidated with the others. Thereafter the City National Bank intervened and set up the fact that it had taken over the assets of the Mechanics' Trust & Savings Bank and was the owner of this obligation. It also averred that Buffaloe & Co. had in turn executed an assignment to it of its funds in the hands of Weil. The bank asked that it be adjudged payment out of the sum reported by the master commissioner to be due Sutton and Buffaloe & Co. Weil was not summoned on this intervening petition, but had been in the original suit of the Mechanics' Trust & Savings Bank. What has been said in reference to the judgment of the Tri-State Ornamental Plastering Company seems sufficient to show that the order directing Weil to pay the bank $1,230.96, which had been adjudged due by him to Sutton, was proper.

■ The judgment awarded interest on the several claims from June 1, 1929. This, Weil says, was an arbitrary date, and clearly erroneous. The various claimants had asked for interest from the dates on which they claimed their accounts were payable. Except the claim of the Pence Tile Works, the amounts due were not questioned; the contests being as to whether Weil should pay them as his direct obligations or under the assignments out of the funds due by him to Buffaloe & Co. The date was not arbitrarily fixed. The contract provided that the final payment should be made by Weil thirty days after the completion of the building. It was, as stated, turned over to him on April 29th, and in fixing the date from which interest should run the court was doubtless guided by the terms of the contract. The effect of the judgment was that Weil should have paid Buffaloe & Co. the sum awarded it according to the terms of the contract. It may be that on some of the items a few days' interest too much was adjudged, and on some others not quite enough, but on the whole matter substantial justice was done.

██ The contract for the decorative tile work in the lobby, dining rooms, bathrooms, etc., was sublet to the Southern Mosaic Company. It purchased the tile from F. K. Pence, doing business under the style of F. K. Pence Tile Works, for $12,753.37. There remained unpaid by Buffaloe & Co. to the Mosaic Company a balance of $6,153.37. It assigned the claim to Pence. Pence perfected a materialman's lien. Weil notified Buffaloe & Co. not to pay this claim. Thereupon Pence filed suit against Weil for the enforcement of his lien. Weil traversed the petition, and asserted a counterclaim for $3,000 in damages by reason of the failure to furnish tiling up to the samples in respect to the grade and color and in accordance with the plans and specifications. Upon the issues made, judgment was rendered affirming the master commissioner's report awarding $1,000 damages as a credit against the claim. Judgment for the balance of $5,153.28 was rendered against Weil, and the lien adjudged. He is not objecting to the judgment, but Pence is insisting upon a reversal of that part allowing damages upon the grounds that there was no failure to furnish the tile as contracted; that it was accepted after inspection; that no damages were proven, but, if wrong in that point, then Weil's remedy is against Buffaloe & Co. and its subcontractor, Southern Mosaic Company.

On the last proposition, it must be remembered that Pence was standing in the shoes of the Mosaic Company by reason of the assignment of its claims. He was seeking to enforce a lien against Weil's property, and, if that ought not to be done, certainly Weil had the right to question it. Pence never made Buffaloe & Co. a party to his suit, but went directly after the owner, and it would be an anomaly not to permit a defense where there was one. We think the procedure and judgment were authorized by sections 2463 and 2651b-16 of the Statutes; and American Radiator Co. v. McKee, 140 Ky. 105, 130 S. W. 977; Doll v. Young, 149 Ky. 347, 149 S. W. 854. The amount of the damage allowed was deducted from the sum awarded Buffaloe & Co., so that the loss is ultimately borne by the one who failed to comply with the contract.

On the question of whether the tile came up to the contract, there is contradictory evidence. On one side it is maintained that the contract permitted some varia-

tion from exact uniformity in the shade of the tiling, as it provided for 70 per cent. select and 30 per cent. common or run of kiln, and it is claimed that the tile was so chosen and installed. On the other hand, there is very substantial evidence of material differences going much beyond that standard or scope of selection. In order to make the building of the class known as "feature hotels," considerable additional expense was incurred in the decorative tiling, which constituted a considerable part of the building ornamentation. Though the owner and others admitted that a very pleasing effect was produced by the tile work and its coloring, yet it was shown that it was much off color and lacked uniformity in many places. An examination of the sample panels which had been submitted in comparison with the completed job convinced the trial court that the work was not up to sample and that the damage was $1,000. We cannot say that that sum is wrong.

But it is said that the work was accepted by the owner, and any claim for defects was waived. The evidence upon this point is that Weil and his superintendent observed the lack of uniform color in some places near the beginning of the work and made complaint to Pence about it. They were met with the response that it was the best he could do, and they would have to take that or nothing. So he was permitted to go ahead rather than to delay the construction by legal action. As was pointed out in Cassinelli v. Stacy, supra, the owner of the building does not forfeit his right to assert a claim against the builder for damages by taking possession of it. It may be otherwise where the owner, having knowledge of the defects, has stood by silently and then accepted the work as a sufficient compliance with the contract and later raises objection. Compare Hartford Mill Co. v. Hartford Tobacco Warehouse Co. (Ky.) 121 S. W. 477. But, under the circumstances here disclosed, where seasonable complaint was made, and the contractor showed some defiance, and willfully proceeded to use the objectionable material, and the construction would have been delayed in a substantial degree if he had been legally stopped, it must be regarded that there was an election by the owner to accept the work and recover for the breach of contract and that the contractor cannot escape the consequences of the breach.

The basis of the argument that in any event no legal damages were proven is that Weil testified that, should he desire to sell the property, it would bring $2,500 to $3,000 less than it would had the tile been as specified. There was evidence also that that sum was the difference in value of the tile which was bought and furnished. This was substantially saying that such sum was the difference between the contract price of the work if done according to the agreement and the reasonable value as finished. See Cassinelli v. Stacy, supra. This part of the judgment is affirmed.

■ Finally, a general complaint is registered against the judgment by Weil as being so confusing and indefinite that it is incapable of execution. The multiplicity of claims and counterclaims and the many cross-currents naturally made the judgment long and difficult to draw. The sum of $12,276.96 was specifically awarded Buffaloe & Co. against Weil. Out of this it was adjudged that the liens and judgments in favor of the subcontractors and materialmen for which Buffaloe & Co. was liable should be paid instead of paying it all to that company. In fixing the rights of some of these parties, it became necessary to give judgment against both Buffaloe & Co., which was directly obligated, and against Weil under various assignments, attachments, and liens. This results in some apparent duplications, but, when read together, and particularly in connection with the pleadings, the duplications pass out. In several instances it was adjudged that the claims to be paid some of the parties were subject to the liens of their respective attorneys for their fees. The amount of those liens could not be or was not declared. That was a matter left open which can be established. On the whole, the judgment can be made certain by calculation and having due regard for the pleadings and the ultimate results.

■ The Louisville National Bank & Trust Company came into the case and set up its mortgage executed by Weil on the property on September 6, 1928, to secure a bond issue of $400,000. It had been duly recorded before there was a filing or notice of any of the mechanic's or materialmen's liens. The first of these liens was filed January 4, 1929. The money was loaned for the purpose of erecting the building, and it is alleged that Weil had used the same for that purpose

and the payment of labor and material prior to the filing of any of the lien notices. Approximately $200,000 additional had been paid on the construction costs. Most of the bills had been paid in full, and it does not appear that any attempt was made to prorate the proceeds of the loan among the various contractors as it is provided shall be done by section 2467a-1, Statutes. That statute does not affect the matter of priority between such mortgages and mechanic's liens. It makes it the duty of the owner securing the money to do so, and puts a substantial penalty upon him if he fails to comply with the terms of the statute.

Section 2463 of the Statutes gives liens to those furnishing labor and material entering into a building or the improvement of property to secure their payment. Those liens are declared to be superior to any subsequent mortgage or incumbrance, and they relate back and take effect from the time of the commencement of the labor or the furnishing of the material. But such liens do not take precedence over a mortgage unless there shall have been previously filed the statements provided in section 2468. Trust Co. of America v. Casey, 131 Ky. 771, 115 S. W. 780; Voss v. Home Loan & Building Association, 167 Ky. 231, 180 S. W. 368. It is apparent, therefore, that the bank's mortgage is superior to the liens adjudged, unless it had actual notice of them or of facts sufficient to put it on notice when it furnished the money. Proof of that does not appear to have been undertaken. The opposing parties rest their argument upon the idea that the mortgagee knew the purposes for which the money was advanced, and therefore is held to have had knowledge that the labor and materials were being furnished. Perhaps so; but that was not enough. In many particulars the case of Kentucky Lumber & Mill Work Co. v. Kentucky Title Savings Bank & Trust Co., 184 Ky. 244, 211 S. W. 765, 5 A. L. R. 391, is much like the instant one. As pointed out there, knowledge by the mortgagee that improvements are being made upon property secured by its mortgage, but without knowledge of the nature of the contracts between the owner and the materialmen and laborers, and without knowledge that the latter have liens, does not amount to actual notice. There is some difference where the mortgagee has a contract with the mortgagor as to the advancement of

funds and the time when they should be advanced, or has himself undertaken to pay for the work as it proceeds. The facts of that case supporting the decision that as to certain amounts the bank's mortgage was inferior to the mechanic's liens are different from those presented here. There is nothing in this record, so far as our attention has been called to it, showing that the Louisville National Bank & Trust Company kept its hands on the money or paid it out from time to time in satisfaction of the work as it progressed or that it had actual knowledge of any unpaid claims when it paid over the money or any part of it to the mortgagor. We are of the opinion, therefore, that the judgment is in error to the extent that it decreed this mortgage to be subordinate to the various mechanic's liens.

With this exception, we are of the opinion tha.. substantial justice has been done to all the parties.

Wherefore the judgment is affirmed in all respects except as to that part relating to the mortgage of the Louisville Naitonal Bank & Trust Company, which is reversed.