Constantino J. REGALBUTO and Gina B. Regalbuto, Appellants,

v.

Floyd H. GRANT, Jr., Appellee.

Court of Appeals of Kentucky.

Dec. 3, 1971.

Robert G. Hunt, King, Deep, Branaman & Hunt, Henderson, for appellants.

John L. Dorsey, Jr., Dorsey, Sullivan & King, Henderson, for appellee.

DAVIS, Commissioner.

The appellee, Floyd H. Grant, Jr., sued the appellants, Constantino J. Regalbuto and Gina B. Regalbuto, his wife, asserting that they owed him a balance of $2,189.85 on a contract under which he had built a residence for them. For convenience we shall refer to appellee Grant as the builder and the Regalbutos as the owners.

The owners asserted a counterclaim against the builder, based on their claims of numerous defects in the building. The prayer of their counterclaim was for return to them of $25,794.06 already paid by them to the builder, plus an adjudication that the building contract was void by reason of nonperformance by the builder or, alternatively, recovery of $32,092.27 for breach of contract and $10,000 by way of punitive damages. There was a trial before a jury, resulting in a verdict for the builder of $1600. This verdict represents

a deduction of the builder's claim from $2,-189.85, reflecting that the jury had considered the owners entitled to recovery of only $589.85 on their counterclaim. The owners have appealed and in voluminous briefs have asserted thirteen assignments of error. No useful purpose will be served by cataloging them at this point.

■ Basically, the evidence showed that the builder and owners entered into a written contract dated August 31, 1967, by the terms of which the builder agreed to build and the owners agreed to buy from him a residence which the parties had already agreed upon, for a total consideration of $30,508. In the caption of the agreement the owners were designated by their respective names, and the builder was described as "Floyd Grant Construction, a company duly organized and existing under and by virtue of the laws of the State of Kentucky, hereinafter called contractor." The evidence showed that there is no such corporation as Floyd Grant Construction. Grant testified that he did business under that name but not as a corporate entity. A review of the record discloses that the parties never envisioned that Floyd Grant Construction was a corporation. It follows that the court did not err in permitting the litigation to proceed in behalf of Floyd H. Grant, Jr., as an individual. There is no merit in the eleventh assignment of error which raises this question.

After the contract was signed on August 31, 1967, work was commenced on the project sometime in September of 1967, and a few weeks later Constantino J. Regalbuto moved into the admittedly unfinished residence, using a cot and doing interior painting. It was not until January of 1968 that both Mr. and Mrs. Regalbuto moved into the premises. At that time the air-conditioning unit had not been installed. There then remained due to the builder, according to his computations, the sum of $5,-058, a portion of which represented the amount to be paid for the yet uninstalled air-conditioning unit. Mrs. Regalbuto told the builder that she was in no hurry for the air conditioner since there would be no need for it at that time of the year, and expressed the view that she might decide not to have the unit installed and claim a credit for it. The builder testified that he was at all times ready and willing to cause the installation of the air conditioner but that it could not be installed until the owners had completed a patio upon which the condenser was to rest. In any event, the air-conditioning unit was ultimately installed after the patio had been completed. The owners paid for it and were given credit by the builder for the amount paid.

Shortly after the owners moved into the residence, the builder sought to collect from them the balance due on the contract. The owners contended that there were numerous defects which must be remedied before they would pay. In February 1968, the builder had a conference with the owners and there was prepared by them a check list, or punch list, containing nineteen items which the owners then deemed requiring attention by the builder. The builder attended to these claims, most of which were relatively insignificant. Nevertheless, the owners continued to refuse to remit any balance to the builder. In April 1968, the builder, in company with a representative of Scholz Homes, the company which furnished the prefabricated components for the residence, again consulted with the owners, at which time another punch list of twenty-one items was submitted. The evidence for the builder was to the effect that he had adequately provided for each and every defect on each of those lists which required any attention on his part. On neither of the two punch lists was there any reference to any claimed defect in the plumbing or septic-tank disposal system.

When the efforts at settlement broke down, the builder filed this suit on August 6, 1969.

■ The first claim of the owners is that the court erred in refusing to direct a verdict for them, since the evidence

showed conclusively that the builder had not substantially complied with his contract to build the house for them. In support of this contention the owners contend that the evidence is uncontradicted that:

"(a) The sanitary facilities, consisting of a septic tank and field bed, do not function and cannot be made to function in their location as placed by the contractor;

(b) The septic tank and field bed facilities are not even on the lot of the defendants-appellants;

(c) That there was not even tender of completion of the contract upon the date alleged in the original complaint which was 'during the month of February, 1968';

(d) Appellee Grant to a substantial extent refused to supervise construction;

(e) In addition, there was substantial evidence of many other defects and deficiencies in the construction of the house which the contractor refused to remedy, many of which defects counsel for appellee conceded in his closing argument."

A review of the evidence discloses that there was substantial evidence in behalf of the builder that the sanitary facilities did perform without incident until at least August 1969, and that any imperfection in the performance was readily correctable and probably was not due to improper installation so much as to improper use and maintenance after installation. There was no definitive showing that the septic tank and field-bed facilities were not situated on the lot of the owners, but the builder stipulated in his evidence that he would arrange for an easement to be granted to the owners which would enable them to extend their field-bed facilities onto the adjoining lot if that became necessary. After the judgment in this case, and on motion of the owners, an amended judgment was entered implementing that agreement, so that any complaint of the alleged mislocation of the facilities appears moot. The other matters concerning the completion of the contract, failure to supervise construction, and "many other defects and deficiencies in the construction" were fully developed in the evidence and completely considered by the jury. Jury issues were generated and the court properly denied the owners' motion for a directed verdict. It is noteworthy that one of the provisions of the contract provided in part: "Acceptance of the work provided for herein shall be deemed final at such time as owners have assumed possession of their residence in the improvements and residence to be constructed here." Certainly, the owners did assume possession and residence in the property, and while it is true that they complained of certain stated defects, the builder undertook to, and claimed that he did, rectify all of them. The verdict connotes the jury's belief that the builder substantially performed his obligations.

■ In their second point the owners move a step further and contend that since the uncontradicted evidence showed substantial nonperformance by the builder then the court should have directed a verdict against the builder in favor of the owners for $25,794.50, the amount they had paid on the contract directly to the builder, plus certain other items paid by the owners to the builder and some subcontractors jointly. In support of this contention the owners rely upon Nance v. Patterson Building Company, 140 Ky. 564, 131 S.W. 484, but their reliance upon that decision is misplaced. In Nance, the contractor agreed to construct a building on a lot which he owned and to sell Mrs. Nance the completed building and lot for $2800 of which she paid $100 in advance. The house was not completed within the time specified in the contract, and when it was finished, it varied materially from the plan upon which the parties had agreed. Mrs. Nance declined to accept the property, whereupon the builder sold it to another for $2850. In that state of case the court held that Mrs. Nance was entitled to recover from the builder what she had paid him since he had failed

to perform his contract with her. In the present case it would seem that the owners believed themselves entitled to retain the building in which they are living and to recoup everything they have paid to the builder. Nothing in Nance v. Patterson Building Company lends support to such a harsh result, nor is any other authority cited which suggests that view. This court is not persuaded that the trial court erred in rejecting the view alleged by the owners in this regard.

The third ground of error asserted by the owners relates to the court's refusal to admit in evidence a letter dated July 31, 1969, directed to Mrs. Regalbuto from the Henderson County Health Department, signed by J. Leland Tanner, M. D., Health Officer. The letter reported that Messrs. Walker and Day had inspected the sewage problem on the Regalbuto property and reported their view that the drain-tile field could not function satisfactorily because of its location in a low area which received surface drainage from a rather large area. The letter reported the recommendation that the drain field be installed on a higher elevation to eliminate saturation by surface water. The letter also contained the sentences: "We were informed that the present septic tank and drain field is located on adjacent property not owned by you. The state plumbing code stipulates that the drain field lines shall not be closer than five feet from the adjoining property line. Keep this requirement in mind when making corrections." The trial court refused to permit Dr. Tanner to introduce the letter because the information contained in the letter was not based upon personal investigation, knowledge, or inspection by Dr. Tanner. The owners contend that KRS 422.020(4) required the admission of the letter. The statute provides:

"Any public record, kept by any state administrative agency, or copy duly certified by the custodian thereof, shall be prima facie evidence of its contents in all proceedings."

So far as it appears, the effect of the statute is to make the letter prima facie evidence that such an inspection had been made and such reports had been made. The statute does not eliminate the fact that what is in the official document is hearsay itself. In any event, if it were to be conceded that the court should have admitted the letter, such error, if any, was not a prejudicial one. There was other testimony, pro and con, relating to the terrain and whether the drain field lay in a disadvantaged position by reason of its lowness. Moreover, the jury was permitted to view the premises. Additionally, the amended judgment affords adequate area for extension of the field. The admission of the bare statements of the letter could hardly have had a significant impact upon the final result of the case.

Next the owners complain that the trial court erred in refusing to allow pretrial discovery of the amounts paid by the builder to subcontractors and materialmen in his performance of the contract. This claim of error seems to rest on the owners' thought that the builder had so far failed to perform his contract that he could not claim or recover any profit under it. A review of the entire record and the extensive briefs leaves the court completely unconvinced that the owners have demonstrated any prejudice to them by the trial court's denial of this item of discovery. Conceding, without deciding, that the court should have granted such a discovery, the failure to do so was not prejudicial and was inconsequential. CR 61.01.

What has just been said is applicable to the fifth assignment of error which relates to a passing reference in the testimony of the builder that he had lost money on the contract. That was not of consequence to either side of the case, but in response to a claim by the owners that the builder had "taken them to the cleaners."

The same is true of the sixth assignment of error respecting testimony of final plumbing inspection by the county

health department. An official of the health department was permitted to testify concerning the official application for installation of the septic tank and appurtenant facilities by the builder on the owners' property. The application showed that the regular inspections of the installation had been performed by the agents of the health department. The court is inclined to appreciate the dilemma expressed by counsel for the owners when he wonders how a distinction can be made in the rejection of the evidence offered in the owners' behalf through Dr. Tanner and the admission of the evidence by the health department official concerning the application. Again, there was other evidence indicating that the installation of the septic tank had proceeded normally, and there was no real contention that anything about the actual installation of the facilities was amiss. In these circumstances, whatever error there may have been, if any, was harmless.

■ The seventh assignment of error is the complaint that the trial court refused to instruct the jury in accord with the following instructions submitted by the owners: " * * * and that the said Floyd H. Grant, Jr., as a matter of law warranted the building that was to be constructed under the terms of the contract to be free from defects and in accordance with all specifications and standards of excellency by workmen and subcontractors skilled in their trade." The contract between the parties was introduced into evidence. The court instructed the jury that they must find from the evidence that the builder substantially performed his building contract as a predicate to awarding him $2,189.85, claimed by him as the difference between the contract price and the amount already paid and credited. The court further told the jury that if it found that there were defects in the construction which had not been corrected and for which the builder was responsible or "other matters for which defendants are entitled to be compensated as hereinafter set out" then the jury should deduct from any amount awarded the build-er such sums as it believed from the evidence were due to the owners on account of the items mentioned. These instructions fairly submitted the issues to the jury. See Weil v. B. E. Buffaloe & Co., 251 Ky. 673, 65 S.W.2d 704. The "standards of excellency" terminology appeared in the contract in Paragraph 6 which provided in part for "inspection and testing by owners of the work as the same progresses, and upon its completion, in order that owners may be assured that all specifications and standards of excellency have been met." This language was not sufficient to cast upon the builder the obligation to produce an utterly perfect structure free from every imaginable or imagined flaw or defect.

■ The eighth complaint deals with the failure of the instructions to specify a completion date for the tender by the builder of the structure to the owners. The owners cite Baker Pool Company v. Bennett, Ky., 411 S.W.2d 335, for the proposition that defects in building contracts are to be computed as of the completion date and the jury instructed accordingly. A careful reading of that decision fails to disclose such a direct statement of the law, but even if it did, this case was tried in the overall picture of the conditions obtaining when the owners moved into the house in the early part of 1968. The jury could not have been misled by the instructions as given them, nor was there error in the court's failure to require the jury to decide upon some specific completion date.

■ The ninth claimed error occurred when counsel for the builder began his opening statement to the jury in this language:

"If Your Honor please, Mr. Hunt, and ladies and gentlemen of the jury, on behalf of myself and my client at the outset I'd like to express our appreciation for you ladies and gentlemen coming out on such a day and serving in the Court to help these parties.

MR. HUNT: (Interposing) Well now, Your Honor, I'm going to object to this

kind of thing, he's supposed to be stating his case to the jury and I'll object to this.

COURT: Well, overruled."

It is contended for the owners that their counsel was "put down" at the very inception of the jury trial, thereby putting him in a ridiculous posture and impairing his chances of success. The court is unpersuaded that any such result flowed from this trivial incident.

■ Point ten in the owners' behalf questions the court's permitting the contract papers in evidence because they were not authenticated. There was controversy as to whether the papers admitted were the ones signed, and the court found upon substantial evidence that they were and admitted them. There was no error in this.

Contention eleven concerning the right of Floyd H. Grant, Jr., to proceed in his own name has already been dealt with.

■ Contention twelve is that the court should have granted a summary judgment in favor of the owners, since the pleadings and evidentiary material failed to show a tender of the property or acceptance of the completed structure by the date alleged in the complaint. This argument has to do with the fact that the air-conditioning unit admittedly was not installed until May of 1969. The reasons for the delay in installation of that unit have already been discussed, and the trial court properly refused to grant summary judgment on the ground mentioned, or any other ground asserted.

The thirteenth and final point urged for reversal deals with that portion of Instruction No. 1A by which the court told the jury that it could find for the builder if it believed from the evidence that he had "substantially performed" the building contract. Again the appellant owners cite Baker Pool Company v. Bennett, Ky., 411 S.W.2d 335, in which sample instructions were set out but which dealt with the measure of damages for remedying defects. As already noted, the court is of the view that the instructions given amply placed before the jury all of the issues presented in the evidence and afforded an appropriate framework within which the jury could apply its factual determination of the disputed matters.

Upon the entire record the court has concluded that no prejudicial error has been demonstrated.

The judgment is affirmed.

MILLIKEN, C. J., and HILL, NEIKIRK, OSBORNE, REED and STEINFELD, JJ., concur.

PALMORE, J., not sitting.