Wides et al. v. Wides.
Wides v. Wides et al.

June 22, 1945.

R. P. Moloney and Jos. J. Bradley for appellants Edward Wides and others.

W. H. Hanratty, and L. O. Thompson for appellee Goldie Wides.

Jo T. Orendorf and Sam P. Strother for appellant Leah O. Wides.

R. P. Moloney, Jos. J. Bradley, L. O. Thompson, and Stoll, Muir, Townsend & Park for appellees Goldie Wides and others.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming on first appeal, reversing on second appeal.

We have two more chapters in the serial about the estate of the late Morris Wides. One of these questions is novel, as was that in Wides v. Wides' Ex'r, 299 Ky. 103, 184 S. W. 2d 579, in which we held that his widow had the right to renounce his will and to recover her dowable and distributable share notwithstanding a contract her deceased husband had made some years before with a former wife, and embodied in a judgment of divorce, by which he bound himself to bequeath his entire estate to his divorced wife and their children. The other case, Baker v. Wides' Ex'r, 299 Ky. 414, 185 S. W. 2d 699, related to the settlement of business partnerships.

1. The right of the widow, Mrs. Goldie Wides, to claim her distributable share under the statutes was found to exist as a matter of equity, considering all the circumstances, and in a large, if not controlling degree, because of the policy of the law. We reversed the judgment which had sustained a demurrer and dismissed the widow's pleading in which she alleged that she did not have any notice or knowledge of the contract and the judgment which prima facie deprived her of all interest in the estate. We said (299 Ky. 103, 184 S. W. 2d 584): "We do not express an opinion as to the proper decision in a case like this where the party adversely

affected by such a contract has knowledge of its existence, actual or constructive. We are of opinion, however, that the innocence of the wife under the present circumstances is a material consideration in weighing the equities of the case.''

When the case had been reinstated on the trial court's docket, the widow's adversaries tendered a pleading traversing the allegation of innocence of notice and affirmatively averring that the widow had married Wides with full notice and knowledge of the situation. They moved also that evidence be heard upon the issue. The court rejected the pleading and overruled the motion, which had the effect of construing our opinion to hold as a matter of law that innocence or knowledge was immaterial. Perhaps the court reached that conclusion independently of the opinion. The first styled appeal is from the judgment rendered in favor of the widow upon that branch of the case.

We think the court ruled correctly. Although, as disclosed in the authorities cited and our own reasoning, the widow's innocence was a matter of considerable equity, yet it was and is not controlling in and of itself. The paramount factor is the policy of the law to protect a widow in securing her distributable share in her husband's estate. The judgment on that branch of the case is accordingly affirmed.

2. The second styled appeal presents the right of the first and divorced wife, Leah O. Wides, to recover the commuted cash value of monthly payments claimed under another provision of the marriage settlement and entered as a judgment in the divorce proceeding. The trial court denied her claim altogether. It had been earlier filed with the Master Commissioner but allowed to lie dormant until we had construed the item of the contract and judgment relating to the entire estate.

The separation agreement making a settlement of property rights had four different provisions. Throughout the instrument Morris Wides was referred to as the ''party of the first part'' and Leah O. Wides as the ''party of the second part''. The first item or paragraph of the contract is as follows: ''The party of the first part agrees to pay to the party of the second part, during the lifetime of the party of the first part or as long as the

party of the second party remains unmarried, the sum of Forty ($40.00) Dollars per month, one-half of said amount to be paid on the 1st day of each month and the other half to be paid on the 15th day of each month, beginning the 1st day of the month next following the granting of divorce between the parties hereto."

The contract was filed in the case by agreement, "to take effect in the event a divorce is granted."

Either for some undisclosed reason or by an unexplained mistake, the judgment relating to this item is different, in that it provides for the continuance of the payment of $40 a month "during the lifetime of the said Leah O. Wides, or as long as she remains unmarried", rather than during her husband's lifetime. That portion of the judgment, entered October 14, 1937, is in full as follows: "It is further considered and adjudged by the court, in accordance with the agreed order between the plaintiff and the defendant herein, dated June 24th, 1937 and filed herein June 26th, 1937, in settlement of their property rights and the alimony claim of the defendant, Leah O. Wides, it is ordered and adjudged by the court that the plaintiff, Morris Wides, shall pay to the defendant, Leah O. Wides, during the lifetime of the said Leah O. Wides, or as long as she remains unmarried, the sum of Forty ($40.00) Dollars per month, payable Twenty ($20.00) Dollars on the 1st and Twenty ($20.00) Dollars on the 15th day of each month, beginning November 1st, 1937."

The circuit court was of opinion that the contract and the judgment should be read together and that the terms of the contract should prevail; hence, that Mrs. Wides' right to collect the $40 per month ceased with Mr. Wides' death. That ruling presents the first and most important question on the appeal.

It is a rule of general application that, unlike clerical errors, judicial errors cannot be corrected at any time, but must be done seasonably, in accordance with statutory or code provisions for the correction of erroneous judgments. Although it is often difficult to draw the distinction between the two classes of error, McKey v. Moore, 7 Ky. 321, 4 Bibb 321, it may be said as a guide that the distinction is not dependent upon the source of the error. 30 Am. Jur. Judgments, sec. 109.

See Annotations, 10 A. L. R. 588; 67 A. L. R. 842; 126 A. L. R. 977. If a judgment is erroneous because of a judicial mistake, it is conclusive until vacated by a proper proceeding.

Our old case of Bramblet's Heirs v. Pickett's Heirs, 9 Ky. 10, 2 A. K. Marsh. 10, 12 Am. Dec. 350, decided in 1819, is consonant with the view* that the distinction between clerical and judicial errors does not depend upon the source of the error, and is of particular application in the present case involving an agreement different from the judgment. In that case a judgment was entered dismissing a complaint, and decreeing that the complainant should pay the defendants their costs "per agreement filed". Some time after the judgment had become final the complainants were ruled to show cause why the decree should not be amended by making it "conformable in substance with the whole of the written agreement referred to in said decree." The court upon a summary hearing amended the judgment by directing the complainants to deliver to the defendants certain lands referred to in the agreement. This court denied such power in the trial court, saying: "But the alteration in this case cannot, we apprehend, be deemed to be the correction or amendment of a mere clerical misprision. It was, in fact, a total change of the substance of the decree, or rather it was pronouncing an entire new decree, except as to costs."

Likewise, the judgment in the instant case alters the substance and the letter of the judgment in the divorce case, to make it conform to the agreement, and does so upon a collateral attack.

Although not involving an agreement, in Broderick v. Bourbon Agricultural Bank & Trust Co., 248 Ky. 191, 58 S. W. 2d 397, we considered the effect of a patently erroneous provision in a judgment. A testator in disposing of the estate in remainder after the death of his wife gave to Broderick "the Liberty Bond 4 Loan". In a suit for the settlement of the estate, the executor had reported having seven United States Fourth Liberty Loan Bonds, and the judgment was entered awarding all of them to Broderick. When the life tenant had died, about five years later, an effort was made in another suit to have the court correct the judgment in this particular as being a clerical error. It appeared that the testator

had in fact owned only one such bond and the executor had acquired the other six during the process of the settlement. The error in the judgment was not regarded as clerical but as one of law—an erroneous construction of the will. Therefore, under the authority of three previous cases, 1 Freeman on Judgments, sec. 357, and 34 C. J. 232, we ruled that the error could not be corrected except by an appeal, and since the time for an appeal had expired, it remained conclusive.

See Turner v. Ewald, 290 Ky. 833, 162 S. W. 2d 181, and Turner v. Ewald, 295 Ky. 764, 174 S. W. 2d 431, involving a marriage settlement entered as part of a judgment, which was sought to be avoided by a change in the situation of the parties.

The conflict between the separation agreement of Morris Wides and Leah O. Wides and the judgment relating to it is not unlike the condition in the Broderick case, a patent error. Had the same terms of "party of the first part" and "party of the second part" been used in the judgment as in the contract but transposed, or "first" used instead of "second", it might be regarded as a clerical misprision, that is, an error in recording the judgment. But the judgment specifically says the money shall be paid "during the lifetime of Leah O. Wides or until she remarries." The presumption is that this is the correct judgment of the court. For aught that appears, there may have been a verbal agreement of modification of the contract and the court rendered the judgment accordingly. Even if the judgment was not what the judge intended to be entered, still it cannot be reached and avoided in this way. Wiggins v. Perry, 343 Mo. 40, 119 S. W. 2d 839, 126 A. L. R. 949. The error, if any, was a judicial and not a clerical error, and the judgment must prevail over the contract. It is too late now to be corrected by an appeal or in the lower court by collateral attack upon a presumption based upon the mere prima facie conflict. 30 Am. Jur. Judgments, sec. 413.

This takes us to the question of the validity and interpretation of a judgment which requires the payment of monthly sums to a divorced wife as long as she lives and after the death of the husband.

The executor and the widow, Mrs. Goldie Wides, appellees on this branch of the case, take the position

that the monthly allowance of $40 was for the former wife's maintenance and that it should continue only so long as the ex-husband lived, the provision in the contract that he would devise her an equal share in his estate superseding it. Undoubtedly, that was the contract. But its terms were all merged into the judgment. Then, it is argued that as a matter of law the payments terminated upon the death of the ex-husband; also that the judgment decreed a personal obligation upon Morris Wides which ended with his death, and was not a charge against his estate. In the authorities cited in support of the first proposition, Blades v. Szatai, 151 Md. 644, 135 A. 841, 50 A. L. R. 232, and Borton v. Borton, 230 Ala. 630, 162 So. 529, 101 A. L. R. 320, and in other cases of that class, the contract or the judgment either stipulated that payment should be only during the divorced husband's lifetime or it was silent as to termination. We think that is a proper construction of such judgments, since, as said in 17 Am. Jur., Divorce and Separation, sec. 503: "The function of alimony is merely to make provision for the support of the wife during the lifetime of the husband." So, where nothing is said about how long periodical payments shall be made, it is a perfectly sound and reasonable implication that it was intended they should cease with the ex-husband's death. Such allowance is for support and maintenance, and the legal obligation of a man to maintain his wife beyond his death is met out of his estate—by the statute of descent and distribution, by a will or by a valid contract. We held in Wagner v. Wagner's Ex'r, 188 Ky. 692, 223 S. W. 1011, that the right to recover alimony does not abate with a husband's death since it is more than his personal obligation, our statutes authorizing the courts to make an allowance to a wife out of her husband's estate, which may be collected by execution. That a husband has the right to make such a contract to reach beyond the grave in favor of a divorced wife was upheld in the first opinion in this series of cases. As stated in 17 Am. Jur., Divorce and Separation, sec. 611: "The duration of a decree for alimony is frequently extended beyond the joint lives of the parties by virtue of an agreement of the parties themselves. * * * Similarly, where, by consent of the parties, alimony is awarded for the natural life of the wife, it continues to subsist even after the husband's death." See annota-

tions, 18 A. L. R. 1045, 1050, 1055; 100 A. L. R. 494; 101 A. L. R. 323.

We are concerned here, it is true, with a judgment extending the payments after his death for which there appears prima facie to have been no agreement. However, the decision that it is binding upon the estate of the deceased husband might well be rested upon the finality of the judgment. It was rendered by a court of competent jurisdiction, both of the subject matter and the parties. It violated no statutory limitation. It is not void. But it is fair to note that there are some cases which express the view that whether a provision for periodical payments for support and maintenance of a wife in a decree of divorce abates on the husband's death depends upon the circumstances or upon the nature and terms of the decree allowing the same. 17 Am. Jur., Divorce and Separation, sec. 608. The appellees distinguish the case of Storey v. Storey, 125 Ill. 608, 18 N. E. 329, 331, 1 L. R. A. 320, 8 Am. St. Rep. 417, relied upon by the appellant, as the judgment required the husband to secure the payment of annual sums of alimony, "so long as she may be and remain sole and unmarried", by a bond and deed of trust. It was held to be binding upon the husband's estate according to its terms. As we have already said, the appellees contend that in the absence of such a provision securing the judgment, it must be deemed only a personal obligation of the husband and, therefore, ceased with his decease. If there were ambiguity in the judgment, the argument would be more forceful. But there is no ambiguity as to the extension or termination. While the judgment was not secured, still it was as much a debt as any other adjudicated unsecured debt. We think the court was in error in disallowing the claim.

But the appellant is not entitled to accelerate or have the payments commuted to their present cash value, based on her life expectancy, which cumulated value she alleges is $8,808. In the first place, we know of no provision of the law authorizing it. In the second place, the allowance of the judgment is not so long as Mrs. Wides shall live, but so long as she shall remain unmarried. Marriage would terminate the allowance just as would her death. She might collect the commuted value one day and marry the next.

352

Although it may require indefinite postponement of Wides' estate, nevertheless if the parties cannot agree upon a settlement, some arrangement must be made to have the estate administered so as to provide for these periodical payments.

The judgment in the first styled appeal is affirmed, and in the second styled appeal it is reversed.