Joshua **MACHNIAK,** Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

and

**Joshua Machniak, Appellant,**

v.

**Commonwealth of Kentucky, Appellee.**

Nos. 2008–SC–000352–DG, 2009–SC–000317–TG, 2009–SC–000342–TG.

Supreme Court of Kentucky.

Sept. 22, 2011.

Joseph Brandon Pigg, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General, Susan Roncarti Lenz, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, for appellee.

Opinion of the Court by Justice ABRAMSON.

Joshua Machniak received a three-year prison sentence, probated for three years, but upon revocation of his probation approximately eight months after formal sentencing, the trial court imposed instead a twenty-year prison sentence. While this escalated twenty-year sentence upon revocation of probation was in accord with Machniak's plea agreement, it was contrary to the trial court's written judgment entered at the time of sentencing. Machniak maintains the trial court erred by imposing the lengthier sentence in contravention of the written judgment and, alternatively, argues the heightened sentence violates the Double Jeopardy Clauses of the United States Constitution and the Kentucky Constitution. The Court of Appeals rejected Machniak's alleged errors and affirmed. On discretionary review, we conclude that the discrepancy between the trial court's pronouncement of sentence at the sentencing hearing and the sentence stated in the written judgment was a clerical error subject to correction, but that the error was never prop-

erly corrected under the Kentucky Rules of Criminal Procedure. As a consequence, the three-year sentence stated in the judgment is Machniak's lawful sentence. Accordingly, we reverse the Court of Appeals and remand to the Letcher Circuit Court for proceedings consistent with this Opinion.

### RELEVANT FACTS

In 2005, Machniak was indicted on twenty-nine criminal offenses, twelve of which were class D felonies and the remainder, misdemeanors and a violation. The Commonwealth offered him a plea agreement, under which he would receive a three-year sentence for each felony, all to run concurrently, and be probated for three years; in the event Machniak violated probation, however, the twelve three-year sentences would instead run consecutively. With the assistance of counsel, Machniak accepted and pled guilty. At the sentencing hearing, the trial court announced a sentence in accordance with the plea agreement and then stated, "If these are revoked, then the felony charges will run consecutively to one another. That means one to begin after the completion of the other. You understand that, sir?" Machniak responded in the affirmative. However, contrary to the above colloquy, the written Judgment and Sentence on Plea of Guilty ("the written Judgment"), entered June 12, 2006, did not contain the provision that Machniak's sentences would run consecutively if he violated probation. The written Judgment simply sentenced Machniak to "imprisonment for a maximum term of 3 years probated 3 years." The separate Order of Probation, entered the same day, also failed to contain any provision that the sentences would run consecutively if Machniak's probation was revoked.

Machniak later violated probation and, on February 7, 2007, the trial court entered an Order of Probation Revocation sentencing Machniak to twenty years imprisonment.[1] This Order was consistent with the plea agreement and the trial court's oral statements at the sentencing hearing, but was contrary to the three-year sentence in the written Judgment. Machniak appealed to the Court of Appeals, which rendered its opinion on April 18, 2008, affirming the trial court's imposition of a twenty-year sentence. The Court of Appeals found the discrepancy between the trial court's oral statements at the sentencing hearing and the written judgment was a clerical error, which could be corrected pursuant to RCr 10.10. Though the trial court had not yet entered an amended judgment, the Court of Appeals found the trial court properly corrected the clerical error through the order revoking probation. The Court of Appeals further held Machniak's sentence did not violate the Double Jeopardy Clauses of the United States and Kentucky Constitutions because Machniak had no legitimate expectation in the finality of his sentence. This Court granted Machniak's request for discretionary review.

Meanwhile, the trial court attempted to amend its written Judgment to correctly reflect the terms of the plea agreement by entering an Amended Order on April 22, 2009, more than a year after the Court of Appeals rendered its opinion. Machniak's appeal of the Amended Order was transferred to this Court and consolidated with his discretionary review case. Before this Court, Machniak maintains the trial court erred when it sentenced him to twenty years imprisonment because the written Judgment, sentencing him to a maximum

---

1. Although the twelve three-year sentences running consecutively would have produced a thirty-six year sentence, the trial court capped the sentence at a twenty years pursuant to Kentucky Revised Statute (KRS) 532.110(c) and KRS 532.080(6)(b).

of "three years probated three years," prevails over the oral statements made by the court. Machniak also reiterates his alternative argument that his sentence violates double jeopardy, an issue we need not reach given our disposition of the first issue.

## ANALYSIS

### I. The Written Judgment Sentencing Machniak to "Three Years Probated Three Years" Prevails Over the Trial Court's Oral Statements to the Contrary.

When there is a conflict between a court's oral statements and the written judgment, the written judgment controls. *Commonwealth v. Taber*, 941 S.W.2d 463 (Ky.1997); *Commonwealth v. Hicks*, 869 S.W.2d 35 (Ky.1994). While other jurisdictions may employ a different rule, the law in Kentucky is clear as to the preeminence of a written judgment or order over a court's oral assertions. The Court has found such a rule "essential to the operation of the Court of Justice for judges often voice views and opinions which may be inconsistent with their final judgments." *Hicks*, 869 S.W.2d at 38. If it was permissible for the "comments of a trial judge . . . to impeach the effect of a court's final judgment, the result would be the destruction of any certainty as to the effect of judgments and a state of chaos in judicial proceedings." *Id.* Thus, absent an appropriate written correction, Machniak's sentence is as stated in the written Judgment: "imprisonment for a maximum of 3 years probated 3 years."

### II. The Failure of the Written Judgment to Reflect the Sentence the Judge Imposed at the Sentencing Hearing Is a Clerical Error and Subject to Appropriate Correction.

The rule that written judgments prevail is not, however, without exception.

*See, e.g., Cardwell v. Commonwealth*, 12 S.W.3d 672 (Ky.2000); Kentucky Rule of Civil Procedure (CR) 60.01 and CR 60.02; Kentucky Rule of Criminal Procedure (RCr) 10.10. Among these exceptions is RCr 10.10, which allows a trial court the latitude to correct clerical errors. The rule provides, in pertinent part:

> Clerical mistakes in judgments . . . may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is perfected in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

RCr 10.10. Clerical mistakes or errors, as opposed to judicial errors, are "all errors, mistakes, or omissions which are not the result of the exercise of the judicial function." *Buchanan v. West Ky. Coal Co.*, 218 Ky. 259, 291 S.W. 32, 35 (1927). The distinction between judicial and clerical errors "does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel, or by the judge." *Id.* (citation omitted).

Some inaccuracies are clearly clerical errors, such as an incorrect or missing date on a document in the record, *Citizens Bank & Trust Co. v. McEuen*, 281 Ky. 113, 134 S.W.2d 1012 (1939); *Commonwealth, Dept. of Highways v. Daly*, 374 S.W.2d 497 (Ky.1964); a mistake made when transcribing numbers, *Weil v. B.E. Buffaloe & Co.*, 251 Ky. 673, 65 S.W.2d 704 (1933); or a mathematical error when calculating a judgment, *Bratcher v. Ohio Co. Bank's*

*Assignee,* 152 Ky. 458, 153 S.W. 950 (1913). The nature of other seeming inaccuracies in a trial court's order or judgment, as either clerical or judicial errors, however, is not always so readily apparent.

In *Wides v. Wides,* 300 Ky. 344, 188 S.W.2d 471 (1945), the Court held that a discrepancy between the terms in the parties' separation agreement and the terms in the final judgment, meant to formalize the separation agreement, was not a clerical error. The Wides's separation agreement, which referred to Mr. Wides as the "party of the first part" and Mrs. Wides as the "party of the second part," provided, "The party of the first part agrees to pay to the party of the second part, during the lifetime of the party of the first part or as long as the party of the second part remains unmarried, the sum of Forty ($40.00) Dollars per month." 188 S.W.2d at 473. However, the judgment, which purported to be in accord with the parties' separation agreement, provided, "Morris Wides, shall pay to the defendant, Leah O. Wides, during the lifetime of the said Leah O. Wides, or as long as she remains unmarried, the sum of Forty ($40.00) Dollars per month." *Id.* After Morris died, Leah claimed she was entitled to continue receiving payments until her death, per the terms of the judgment, whereas Morris's heirs claimed the contrary terms in the judgment were due to a clerical error and the agreement should prevail, preventing Leah from receiving payments after Morris's death. *Id.* Lacking a clear indication from the record as to whether the discrepancy between the separation agreement and the judgment was intended by the judge for "some undisclosed reason" or the product of "an unexplained mistake," the Court never definitively found the discrepancy to be an error. *Id.* It noted that, rather than error, the differing language in the judgment could, for example, be due to a later verbal modification of the separation agreement that was not apparent from the record, but which the court considered before entering judgment accordingly. *Id.* The Court did definitively find, however, that "the error, if any, was a judicial and not a clerical error:"

> Had the same terms of 'party of the first part' and 'party of the second part' been used in the judgment as in the contract but transposed, or 'first' used instead of 'second', it might be regarded as a clerical misprision, that is, an error in recording the judgment. But the judgment specifically says the money shall be paid 'during the lifetime of Leah O. Wides or until she remarries.'

*Id.* at 474. As either a judicial error, which thus could not be corrected, or a deliberate judicial decision, the outcome was the same: the judgment controlled. *Id.*

In *Cardwell v. Commonwealth,* 12 S.W.3d 672 (Ky.2000), this Court, in a 4–3 Opinion with a vigorous dissent, encountered another problematic determination regarding the nature of an error, this one related to sentencing. In *Cardwell,* the defendant was convicted and sentenced to ten years' imprisonment. *Id.* at 673. At sentencing, in open court with Cardwell present, the trial court stated Cardwell was to serve the ten-year sentence consecutively to a five-year sentence Cardwell had previously received. *Id.* However, the written judgment failed to include this consecutive provision and it was not until eight months later that the trial court entered an amended judgment correcting the mistake. *Id.* at 674. While acknowledging the amended judgment was entered well after the judgment became final, a bare majority of the Court held the error was clerical and, consequently, correctable under RCr 10.10. *Id.* "The omission in the original judgment of a provision that Cardwell's sentence was to run consecutive with

his previous sentence was a mistake made in reducing the oral judgment to writing. The omission was not the product of judicial reasoning and determination. It was a clerical error." *Id.* at 674–75. The Court noted the amended judgment did effectively increase Cardwell's sentence by five years, but explained the distinction between a judicial error and a clerical error is not "whether the correction of the error results in a substantive change in the judgment. Rather, the distinction turns on whether the error 'was the deliberate result of judicial reasoning and determination.' " *Id.* (quoting *Buchanan,* 291 S.W. 32). The failure to accurately reduce to writing the trial court's intended sentence, a sentence which was evident from a review of the videotaped record and made known to both parties at the sentencing hearing, was a clerical error the judge could correct pursuant to RCr 10.10. As the *Cardwell* majority noted: "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Id.* at 675 (citing *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947)).

██ The case at hand bears distinct similarities to *Cardwell* and, as in that case, we hold the discrepancy between the trial court's intended sentence as stated at the formal sentencing hearing—that Machniak's class D felony sentences run consecutively should Machniak violate probation—and the written Judgment, which lacks this provision, was a clerical error. We declare more formally that which the Court in *Cardwell* implied, *i.e.,* a discrepancy between a trial court's intended sentence and the final judgment is a clerical error where the intended sentence was explicitly expressed by the trial court and fully made known to the parties, and such is readily apparent from the record of the sentencing hearing, with no credible evidence to the contrary. Sentencing is a significant occurrence, as it is when the defendant learns the extent to which he has lost his liberty and the Commonwealth learns what punishment will be imposed.[2] In an ideal world, the written judgment would accurately reflect the appropriate punishment determined by the judge for the crime committed, but unfortunately reality does not always conform to the ideal. Judges have a solemn duty to dispense justice fairly, in accordance with the law, and to maintain the integrity of the justice system so as to merit and hold fast the public's faith in that system. Binding parties to an unintended and mistaken judgment that either delivers an undeserved windfall or imposes an inequitable punishment serves neither party and undermines our system of justice.

Unlike *Wides,* 188 S.W.2d 471, in this case there is a clear record regarding the trial court's intent, namely that Machniak's sentences would run consecutively if Machniak violated probation, a term that was known and agreed to by Machniak. The provision was part of the written plea agreement that Machniak signed and, further, when the trial court took Machniak's guilty plea, and again at sentencing, the judge specifically explained the provision to Machniak, who indicated he understood and voiced no objection. Although Machniak is not entitled to reap the benefit of a clerical error made in reducing his sentence to writing, correction of that error required appropriate action by the trial

---

**2.** Reflective of the unique and considerable nature of sentencing, the General Assembly has constructed a sentencing scheme replete with rules to govern the process, which is discussed further below.

court under RCr 10.10, action that was never timely taken.[3]

## III. The Clerical Error Was Not Properly Corrected By the Trial Court Pursuant to RCr 10.10 and, Consequently, the Judgment and Sentence as Entered Is Controlling.

 As a clerical error, the failure of the final judgment to contain the provision that Machniak's felony sentences would run consecutively if he violated probation was amenable to correction under RCr 10.10. Although quoted above, the precise language of this important rule merits restating. Clerical errors

> may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is perfected in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

RCr 10.10. Thus, a trial court may correct a clerical error on its own before the appeal is perfected,[4] or it may obtain leave of the appellate court and correct the error after the appeal is perfected but while the "appeal is pending." Perfection of the appeal, as referred to in RCr 10.10, occurs in the first appellate court to which the case proceeds. Thus, for a district court order or judgment, the appeal will be perfected in the circuit court and, for a circuit court order or judgment, the appeal will be perfected in the Court of Appeals unless the matter is one which must be heard by this Court in the first instance as a matter of right pursuant to Section 110 of the Kentucky Constitution. If Section 110 applies, the appeal will obviously be perfected in this Court. Once the appeal is perfected, it remains "pending" as provided in RCr 10.10 until such time as there is a final and non-appealable opinion rendered. In the case of a perfected appeal from a circuit court judgment, that finality and non-appealability would occur in one of the following ways: (1) finality of the Court of Appeals' opinion because either no motion for discretionary review was ever filed or the motion was denied by this Court or (2) finality of an opinion of this Court, whether it be a matter of right appeal pursuant to Section 110 or a case like this one, where we granted review of the Court of Appeals' opinion. In short, "the appeal is pending" and a party or trial court seeking to amend pursuant to RCr 10.10 must seek leave of the appropriate higher court where the matter is pending until the last court that addresses the case enters a final and non-appealable ruling.[5]

---

3. It bears note that while only the court can correct the error, careful review of the judgment by the parties will assist in assuring that a clerical error is promptly corrected. In this case, a motion to correct the judgment to conform to the intended sentence stated by the trial judge at the sentencing hearing would most likely have been granted. *See, e.g., Hicks,* 869 S.W.2d at 38 ("[I]f the Commonwealth was to have relief, a timely amendment of the order ... was required.")

4. An appeal is perfected in the appellate court when the Appellant files his or her brief. CR 76.02.

5. We recognize that after the Court of Appeals rules but before a motion for discretionary review is filed in this Court, an "appeal is pending" because there is not yet a final and non-appealable opinion. However, before the motion for discretionary review is actually filed there may be some uncertainty as to which court leave should be sought from under RCr 10.10. Because the case is not pending in this Court until the motion for discretionary review is filed and a case number is assigned, leave should be sought from the Court of Appeals, where the case is not yet final.

In this case, the trial court attempted to correct its error by unilaterally entering the Amended Order on April 22, 2009 but Machniak's appeal was "pending"; indeed, this Court had already granted discretionary review. To comply with RCr 10.10, leave of this Court was absolutely necessary yet it was not and has not been sought. The Amended Order is invalid and Machniak's sentence remains that which was written in the uncorrected final Judgment: "imprisonment for a maximum term of 3 years probated 3 years."[6]

Before addressing the broader issue of the escalating sentence intended to be imposed in this case, one final and extremely important aspect of a trial court's correction of a clerical error in an order or judgment pursuant to RCr 10.10 deserves mention. In this case, the Court of Appeals concluded that the clerical error in Machniak's written Judgment and Sentence on Plea of Guilty was properly corrected by the revocation order: "While the court never actually entered an amended judgment in this case, we believe the order revoking probation was sufficient to do so." This conclusion is simply wrong. A judgment of sentence is the solemn pronouncement of the court regarding the criminal defendant's punishment for crimes committed. While subject to correction when a clerical error occurs, the judgment is not to be corrected implicitly or by allusion in the course of a subsequent order addressing other matters. Rather, the judgment must be corrected by an amended judgment with explicit language invoking RCr 10.10 and expressly acknowledging the necessity of correcting a clerical error in the original judgment.

Only with such express language in an amended judgment can the trial court's intent to correct a clerical error be manifest to all concerned, including the higher courts.

**IV. In any Event, the Intended Sentence, Designed to Escalate if Machniak Violated Probation, Was an Improper Sentence.**

Although unnecessary to the disposition of the case given that Machniak's three-year sentence in the written Judgment is controlling, we are compelled to explain that the intended escalating sentence, which was agreed to by the parties in the plea agreement and which the trial court attempted to impose, was an improper sentence. In short, even had the trial court or the Commonwealth correctly sought leave to amend the written Judgment under RCr 10.10 while the appeal was pending, the resulting sentence of "three years if probated, but twenty years if probation is revoked" could not be upheld by this Court.

Kentucky's criminal sentencing scheme requires the trial court determine and set a defendant's punishment at the time of conviction. KRS 532.030 pertinently provides that "when a person is convicted ... he *shall* have his punishment *fixed* ...." KRS 532.030 (emphasis supplied). The term "fixed," as utilized in KRS 532.030, means "to put into stable or unalterable form" and "to establish definitely." *Webster's II New College Dictionary* 423–24 (1999). *See Galusha v. Commonwealth,* 834 S.W.2d 696 (Ky.App.1992) ("[W]hen one is tried for an offense, upon a finding

---

6. We note that the period pursuant to RCr 10.10 in which correction of the clerical error was possible on the trial court's own initiative extended to August 22, 2007 when Machniak's brief was filed in the Court of Appeals. From then until this Court's final ruling (i.e., this Opinion), amendment was still possible with leave of the appropriate higher court. This lengthy period is more than ample time for the Commonwealth or the trial court to "set the record straight."

of guilt, he is entitled to have his sentence fixed with certainty and finality. Constitutional restraints prevent subsequent enhancement."); *Commonwealth v. Tiryung,* 709 S.W.2d 454 (Ky.1986) ("The statutory scheme requires imposition of a sentence of imprisonment or fine *upon* conviction ....") (emphasis added). The requirement that a defendant receive a certain and stable punishment at the time of conviction, which may not be escalated based on something that occurs subsequently, is further reflected in KRS 532.110(1), which provides, "when multiple sentences of imprisonment are imposed on a defendant ... [the sentences] shall run concurrently *or* consecutively as the court shall determine *at the time of sentence* ...." KRS 532.110(1) (emphasis supplied). KRS 532.030 and 532.110(1) simply do not give trial courts discretion to impose a sentence with alternating or escalating terms. On the contrary, the statutes mandate that trial courts fix a defendant's sentence at the time of conviction, *i.e.,* fix a term certain—a specific number of years for each offense—and then determine whether that sentence or those sentences must run consecutively or concurrently with each other or other outstanding judgments.

■ Consistent with the statutory scheme, our case law makes clear that a trial court may not increase a defendant's punishment because of probation violations that result in revocation. *Howard v. Ingram,* 452 S.W.2d 410 (Ky.1970) ("[A] circuit court is without authority to mete a greater sentence when revoking probation than the sentence which had been prescribed originally.") (quoting *Hord v. Commonwealth,* 450 S.W.2d 530 (Ky.1970)). In *Hord,* the trial court was asked to interpret a statute, now repealed, which could have been read to vest trial courts with the ability to increase a defendant's punishment on revocation of probation. 450

S.W.2d at 531. However, despite the permissible language of the statute, the *Hord* Court rejected the notion that a trial court could increase a punishment beyond that initially imposed, because to do so is "repugnant to the spirit, if not the letter, of the Federal and State Constitutions...." *Id.*

■ Nor may a trial court improperly increase a defendant's sentence by obtaining the defendant's consent. *See Commonwealth v. Gaddie,* 239 S.W.3d 59 (Ky. 2007); *Stallworth v. Commonwealth,* 102 S.W.3d 918 (Ky.2003); *Galusha,* 834 S.W.2d 696. As the Court recently explained in *McClanahan v. Commonwealth,* 308 S.W.3d 694 (Ky.2010), a case in which the defendant agreed to a sentence that exceeded the statutory limits, a sentence that is contrary to the statutes is an improper sentence, the illegality of which is not neutralized by either a jury's recommendation or a defendant's consent. It is the sole province of the Kentucky General Assembly to establish a comprehensive and cohesive system of sentencing laws for the Commonwealth of Kentucky. Trial courts may not impose a sentence that is contrary to the dictates of the legislature, regardless of who suggested or consented to the sentence. "Our courts must not be complicit in the violation of the public policy embedded in our sentencing statutes by turning a blind eye to an unlawful sentence." *Id.*

■ In this case, Machniak's intended sentence was not fixed because it contained the potential for either concurrent or consecutive terms, with Machniak's sentence escalating to twenty years should his probation be revoked. Such a sentence is a clear violation of statutory and case law and could not be legitimized by Machniak's consent. Thus, had the trial court imposed the intended sentence in its original written Judgment or properly amended

the written Judgment accordingly, the resulting sentence would not have been sustainable.

## CONCLUSION

The written Judgment sentencing Machniak to "three years probated three years" prevails over the trial court's oral pronouncements to the contrary. However, the trial court's failure to state in the written Judgment the same sentence pronounced at the sentencing hearing was a clerical error and, therefore, amenable to correction pursuant to RCr 10.10. While the trial court attempted to correct the error, those efforts did not conform to RCr 10.10 and, as a consequence, Machniak's lawful sentence is the three-year sentence stated in the final Judgment. Finally, had the trial court properly amended the written Judgment to reflect the intended sentence, the resulting sentence of "three years if probated, twenty years if probation is revoked" would have violated Kentucky law and been unsustainable by this Court. For the foregoing reasons, we reverse and remand to the Letcher Circuit Court for immediate proceedings consistent with this Opinion.

MINTON, C.J.; NOBLE, and SCHRODER, JJ., concur. SCOTT, J., dissents by separate opinion. VENTERS, J., dissents by separate opinion in which CUNNINGHAM, J., joins.

SCOTT, J., dissenting.

I must respectfully dissent, as I believe the Court of Appeals correctly perceived the trial court's revocation and sentencing order implicitly corrected (amended) the original sentence as pronounced earlier in open court. I also disagree with the majority on the alleged nature of this sentence.

I agreed with the majority in *McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky.2010) because the "hammer" clause in that plea agreement was implemented by the trial judge without the exercise of any discretion as is required by KRS 532.010(1), 533.010(2), 532.050(1), KRS 532.110(1), and RCr 11.02, and the sentence—due to the defendant's violation of the agreement—resulted in an unlawful sentence. *McClanahan*, however, dealt with the consequences of the defendant's violation of the plea agreement, *Id.* at 696–97, while here, we are dealing with a defendant's violation of the court's sentence.[7] And here, the majority reverses, essentially because the trial court fixed the sentence in such a way that the defendant would control whether the sentences would be consecutive or concurrent and served in an institution or fully probated.

Trial courts need as many tools as possible within the statutory guidelines for sentencing the multitude of differing defendants which come before them. Some of these tools (sentencing scenarios) work for some, while others are needed for those more hardened or recalcitrant. Their object, however, when used in connection with probation or conditional discharge, is the same—construct a sentencing package within the statutory guidelines that will assist the defendant in controlling his conduct in such a manner that probation or conditional discharge will work for that defendant, assuming probation or conditional discharge is a viable alternative. Trial courts don't always have to use them, but having them—or threatening their use—can be a useful tool in the successful rehabilitation of an individual.

---

7. The majority agrees that the failure to include the alternative sentence in the judgment (if probation were violated) was a clerical error, subject to correction by the trial court via RCr 10.10 and *Cardwell v. Commonwealth*, 12 S.W.3d 672 (Ky.2000).

Here, Appellant was charged with twenty-nine separate crimes: six counts of third-degree burglary, three counts of theft over three hundred dollars, three counts of theft under three hundred dollars, two counts of first-degree criminal mischief, four counts of third-degree criminal mischief, once count of third-degree assault, one count of resisting arrest, one count of second-degree fleeing or evading the police, one count of public intoxication, two counts of third-degree criminal trespass, one count of third-degree possession of a controlled substance, one count of possession of less than eight ounces of marijuana, one count of possession of drug paraphernalia, and, finally, one count of possession of a controlled substance not in a proper container.

He was probated on June 12, 2006, and his probation was revoked on February 7, 2007—but only after he had violated his probation numerous times. The last was on October 19, 2006, when he was arrested for public intoxication, second-degree possession of a controlled substance, second-degree escape, menacing, criminal mischief, third-degree criminal trespass, alcohol intoxication (first and second offense), and second-degree disorderly conduct.[8] A urinalysis taken the next day found traces of marijuana, cocaine, hydrocodone, and hydromorphone in his system. Upon revocation, the trial court, with one adjustment/implemented the twenty-year sentence.

In reversing the trial court's sentence, the majority now forbids alternative sentences dependent upon a defendant's compliance with the terms of probation or conditional discharge, holding that KRS 532.030 requires the sentence to be "fixed" *at the time of sentencing* and that KRS 532.110(1) requires the trial judge to "determine *at the time of sentence* whether the prison terms shall be served concurrently or consecutively." (Emphasis added).

As to KRS 532.030, I see no reason to hold that the sentence here was *not* fixed at the time of sentencing. In fact, it was. If he complied with the terms of probation, his sentence was three years, if he did not, it would be twenty! All of this *was fixed* at the sentencing and as Appellant was charged with, and pled to, *twenty-nine different charges*, twenty years was a permissible sentence. The fact that the Court lowered Appellant's sentence to three years probation provided he stay clean and sober, keep out of people's homes and buildings, and leave them alone, was a bonus for him and one to which he did not object—that is, until he went about his merry criminal ways.

As to the concurrency issue, KRS 532.110(1) says that "the multiple sentences shall run concurrently or consecutively *as the court shall determine* at the time of sentence." (Emphasis added). Again, the trial court did settle this issue at the time of sentencing. As the trial court stated orally, the sentence was to run concurrently if Appellant complied, but consecutively if he did not. What I cannot read into the statute is that it has to be one way or the other at the time of sentencing and must remain so, notwithstanding the multitude of contingencies yet to occur.

It just seems to me, we are reading something into the statute that the legislature did not intend. Moreover, in so doing, we are unnecessarily restricting sentencing tools our trial courts need to

**8.** He had been previously arrested on July 12, 2006 for alcohol intoxication and possession of a controlled substance.

inhibit conduct against public safety, while at the same time inhibiting contingencies that could assist other defendants in mending their ways. For these reasons, I respectfully dissent.

VENTERS, J., dissenting:

I reluctantly dissent, on both procedural and substantive grounds. Because the substantive error I see in the majority opinion is of more enduring quality, I discuss it first.

Despite holding that "Machniak is not entitled to reap the benefit of a clerical error made in reducing his sentence to writing," the majority bestows upon him that very benefit, and thus upon the Commonwealth the corresponding injustice. In so doing, this Court binds the parties to what we clearly rule to be a clerical error. We knowingly cement in place a written judgment that we know contains a clerical error. As plainly written, RCr 10.10 allows for the correction of clerical errors "at any time." Now, according to the majority, "at any time" means any time "before the appeal is perfected, or ... after the appeal is perfected but while the 'appeal is pending.' "

The majority holds that clerical errors become uncorrectable once the appellate process is over. Obviously, when the appellate courts render an opinion that is directly based upon the clerical error, future correction may be blocked by *res judicata*, the law of the case doctrine, or even laches if the error has induced some degree of detrimental reliance. But otherwise, there is absolutely no reason for this new requirement that limits the correction of clerical errors. After all, some clerical errors not directly pertinent to issues on appeal may go unnoticed until long after the finality of the appeal, when a misspelled name, a misstated date or case number, or even a sentencing provision acquires critical importance.

Because the plain language of RCr 10.10 leaves the clerical error here subject to correction, we should have directly addressed as we did in the original opinion, the question of whether the judgment, imposed upon revocation of Machniak's probation and which reflected the sentence imposed by the trial judge in open court at the original sentencing hearing, could be enforced. I find that preferable to majority's decision to freeze in place the incorrect judgment.

The timing of this modified majority opinion is also of concern. The meaning of RCr 10.10, as now reconstructed by this Court, was never an issue in this case. It appears for the very first time as we deny the Commonwealth's Petition for Rehearing and issue this modified opinion. It is a matter that was never presented or discussed in the Court of Appeals, it was not argued by the parties in the original briefs or oral argument presented to this Court, and was not even mentioned in the Commonwealth's petition for rehearing or in Machniak's response. We should not tackle a novel issue and re-interpret a well-established rule of criminal procedure in a published opinion at this stage of the appellate process, especially after denying a request for rehearing and denying the parties an opportunity to address it.

For those reasons, I dissent.

CUNNINGHAM, J., joins.