Anthony Wayne **FAGAN**, Appellant

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 2010–SC–000791–MR.

Supreme Court of Kentucky.

Aug. 23, 2012.

Roy Alyette Durham, II, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

A circuit court jury convicted Anthony Wayne Fagan of theft by unlawful taking

over $10,000 and three counts of first-degree criminal mischief. The trial court sentenced him to a total of twenty years' imprisonment. Fagan now appeals as a matter of right,[1] asserting that (1) his convictions for theft by unlawful taking over $10,000 and first-degree criminal mischief violate double jeopardy; (2) the trial court erred by amending the final judgment more than ten days after its entry; and (3) the trial court erroneously ordered Fagan to pay restitution exceeding a $100,000 statutory cap.

On review, we find that Fagan's convictions do not violate double jeopardy; and the statutory cap is not applicable to the trial court's restitution order. But we agree that the trial court lacked authority to amend the final judgment more than ten days after its entry. So we affirm Fagan's convictions and sentence. But we vacate the trial court's amended judgment and remand to the trial court to reinstate the final judgment as originally entered.

## I. FACTUAL AND PROCEDURAL HISTORY.

VMV is a Kentucky-based shop that rebuilds and refurbishes locomotives. In January 2010, the plant manager at VMV discovered that someone cut and removed the copper cables from thirty-four locomotives at the shop. To protect against further theft, VMV hired off-duty police officers to watch the property at night. And a few nights after discovering the vandalized locomotives, a security guard notified the authorities when he observed two subjects walking along VMV's fence. The subjects went under the fence and disappeared behind several locomotives, where the police confronted them. Both subjects fled to the fence and began climbing it, throwing items over as they went. They entered the woods, where police eventually

found Fagan lying at the base of a tree. Police also located a flashlight, wrenches, and a cable-cutting tool at the site where Fagan and his cohort climbed the fence.

At trial, Fagan's cousin testified that in the fall of 2009, Fagan paid her to help him sell scrap metal. In January, she noticed that the color of the metal changed from dark to bright silver. Around this time, Fagan called her more often and paid her more to deliver the metal.

Fagan removed over $30,000 worth of cable from the locomotives. Of the damaged locomotives, First Union owned three, GATX owned twenty-four, and NRE owned seven. The repairs to the locomotives cost much more than just the $30,000 worth of cable because it was not possible to splice the high-voltage cables. The cost of repair for the locomotives owned by GATX and First Union totaled over $400,000.

The McCracken County grand jury indicted Fagan for one count of theft by unlawful taking over $10,000, thirty-three counts of first-degree criminal mischief, one count of second-degree criminal mischief, and being a first-degree persistent felony offender (PFO 1). At the close of the Commonwealth's case-in-chief, the thirty-three counts of first-degree criminal mischief were merged into three counts, one for each victim. And before the penalty phase of the trial began, the Commonwealth abandoned the PFO 1 charge.

The jury convicted Fagan of theft by unlawful taking over $10,000 and all three counts of first-degree criminal mischief. The jury recommended a punishment of five years' imprisonment on each charge, to run consecutively for a total of twenty years' imprisonment. The trial court sentenced Fagan in accordance with the jury's

---

1. Ky. Const. § 110(2)(b).

recommendation and ordered Fagan to pay restitution to the victims.

## II. ANALYSIS.

### A. Fagan's Convictions for Theft by Unlawful Taking Over $10,000 and First–Degree Criminal Mischief do not Violate Double Jeopardy.

 The Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution provides, in pertinent part, that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Section 13 of the Kentucky Constitution is nearly identical to, and provides protections that parallel those provided in, the Fifth Amendment.[2] And the General Assembly codified these principles in Kentucky Revised Statutes (KRS) 505.020. Double jeopardy principles protect an accused from being prosecuted or sentenced multiple times for the same offense.

 Fagan argues that his convictions for theft by unlawful taking over $10,000 and first-degree criminal mischief violate double jeopardy because in order to accomplish the theft, it was necessary for him to damage the locomotives.[3] So he claims that the elements of these two offenses are the same under the facts of his case. We disagree because "an overlap of proof does not, of its own accord, establish a double jeopardy violation."[4]

 Kentucky uses the *Blockburger*[5] double jeopardy test. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[6] The *Blockburger* test "focuses on the proof necessary to prove the *statutory* elements of each offense, rather than on the actual evidence presented at trial."[7] So the test can be satisfied despite substantial overlap in the evidence used to prove the offenses.[8]

 Through his course of conduct, Fagan violated the two distinct statutes of theft by unlawful taking over $10,000 and first-degree criminal mischief. So we must look at the elements of these two offenses to determine whether each requires proof of an additional fact that the other does not.

A person commits theft by unlawful taking over $10,000 when he (1) unlawfully (2) takes or exercises control over movable property of another (3) with the intent to deprive the owner; and (4) the value of the property taken is $10,000 or more.[9]

A person is guilty of first-degree criminal mischief when (1) having no right to do so (or any reasonable ground to believe that he has such right) (2) he intentionally or wantonly (3) defaces, destroys, or dam-

2. *Commonwealth v. Burge*, 947 S.W.2d 805, 809 (Ky.1996) (citation omitted).

3. Fagan did not preserve this issue for appellate review; but we "have long held that double jeopardy questions may be reviewed on appeal, even if they were not presented to the trial court." *Mullikan v. Commonwealth*, 341 S.W.3d 99, 102 (Ky.2011) (citations and internal quotations omitted).

4. *Clark v. Commonwealth*, 267 S.W.3d 668, 677 (Ky.2008) (citation omitted).

5. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

6. *Id.* at 304, 52 S.Ct. 180 (citation omitted).

7. *Polk v. Commonwealth*, 679 S.W.2d 231, 233 (Ky.1984) (citations and internal quotations omitted).

8. Leslie W. Abramson, 8 Kentucky Practice, Criminal Practice and Procedure § 14:16 (2011–12).

9. KRS 514.030(1)(a) and (2)(c).

ages any property (4) causing pecuniary loss of $1,000 or more.[10]

Applying the *Blockburger* test, theft by unlawful taking over $10,000 requires intent to deprive the owner of the property; but first-degree criminal mischief does not. And first-degree criminal mischief requires the property be defaced, destroyed, or damaged; but theft by unlawful taking over $10,000 does not. So each statute requires proof of a fact that the other does not.

And we note that the jury instructions also required the jury to find different elements for each conviction.[11] Because each conviction required proof of a fact that the other conviction did not, Fagan's convictions for both theft by unlawful taking over $10,000 and first-degree criminal mischief do not violate double jeopardy.

## B. The Trial Court Lacked Authority to Amend Fagan's Final Judgment.

■ "A defendant is entitled to have his prison sentence reduced by the amount of time he spent in custody before sentencing related to the crime for which he has been sentenced." [12] Until it was amended in 2011, KRS 532.120(3) required the court imposing sentence to credit a defendant with his presentencing custody credit. And "it is generally expected that the final judgment of conviction will include information as to how much, if any, pretrial jail-time credit a defendant is due." [13]

The trial court entered the final judgment in Fagan's case on November 23, 2010. The judgment awarded Fagan 305 days of jail-time credit for time served.[14] On December 11, 2010, the trial court amended the judgment by decreasing Fagan's jail-time credit to 174 days. We agree with Fagan that the jail-time credit mistake was a judicial error. So the trial court erred by amending the final judgment outside of the ten-day time frame provided by Kentucky Rules of Civil Procedure (CR) 59.05.

Generally, "a trial court lacks power to amend a judgment ten days after" it is entered.[15] An exception to this ten-day rule is found in Kentucky Rules of Crimi-

---

**10.** KRS 512.020(1).

**11.** The jury instruction for theft by unlawful taking over $10,000 required the jury to find, beyond a reasonable doubt:

 A. That ... [Fagan] took locomotive cable which was located on the VMV property and belonged to [First] Union, GATX, and NRE;

 B. That in doing so, he knew the locomotive cable was not his own;

 C. That in doing so, he intended to deprive [First] Union, GATX, and NRE of the locomotive cable; AND

 D. That the locomotive cable which he thereby obtained ... had a value of $10,000 or more.

While the jury instructions for the three counts of first-degree criminal mischief required the jury to find, beyond a reasonable doubt:

 A. That ... [Fagan] intentionally or wantonly damaged locomotives which be-longed to [the victims] by removing locomotive cable;

 B. That he had neither a right to do so nor any reasonable ground to believe that he had such a right; AND

 C. That the damage so caused by [Fagan] resulted in a pecuniary loss of $1,000 or more.

**12.** *Bard v. Commonwealth*, 359 S.W.3d 1, 4 (Ky.2011) (*citing* KRS 532.120(3)).

**13.** *Winstead v. Commonwealth*, 327 S.W.3d 479, 485 (Ky.2010) (citation omitted).

**14.** The judgment stated, "IT IS FURTHER ORDERED that·the defendant shall be given credit for pre-sentence confinement time of **305 days....**"

**15.** *Winstead*, 327 S.W.3d at 485–86 (citation omitted); CR 59.05. Kentucky's criminal rules do not provide for trial court control of criminal judgments. So CR 59.05 applies.

nal Procedure (RCr) 10.10, which permits a court to amend clerical errors "at any time on its own initiative or on the motion of any party...." "The distinction between judicial and clerical errors [depends on] whether it was the deliberate result of judicial reasoning and determination...." [16]

■■■ "[A] clerical error is an error in the entry or recording of a judgment." [17] These errors, mistakes, or omissions "are not the result of the exercise of the judicial function." [18] "Some inaccuracies are clearly clerical errors, such as an incorrect or missing date on a document in the record, a mistake made when transcribing numbers, or a mathematical error when calculating a judgment." [19] The Court has also held that

> a discrepancy between a trial court's intended sentence and the final judgment is a clerical error where the intended sentence was explicitly expressed by the trial court and fully made known to the parties, and such is readily apparent from the record of the sentencing hearing, with no credible evidence to the contrary. [20]

So a clerical error occurs when a trial court erroneously records the jail time credit that the court credited at sentencing.

■■■ In contrast, a judicial error is "the result of erroneous judgment or a misapplied judicial or quasi judicial discretion." [21] For instance, "[r]endering a judgment based on incomplete or inaccurate information is a judicial error." [22] So a trial court's erroneous calculation of a defendant's jail time credit because of incomplete or false information is a judicial error.

Here, there is no clear indication on the record as to what caused the mistake in Fagan's jail-time credit. The amending order states the Department of Corrections brought the error to the court's attention but does not directly explain what caused the erroneous grant in the first place. The only suggestion on the record of the error's source comes from the court's statement in the amending order that "McCracken 09–CR–00515 received 132 days credit at final sentencing on June 10, 2010." At sentencing, the trial court granted Fagan's motion to run the current sentence concurrent with a sentence of 6 months' imprisonment that he received in McCracken Circuit Court Case Number 09–CR–00515. Fagan stated on the record that by running the sentences concurrently he should gain approximately another six months of jail-time credit on his current, twenty-year sentence.

So the amending order appears to suggest that the jail-time credit error occurred when the court carried over the credit from Fagan's prior conviction. But this still does not elucidate whether the error was clerical or judicial. We know that the trial court did not just mistakenly record the oral judgment because the court did not mention Fagan's jail-time

**16.** *Machniak v. Commonwealth,* 351 S.W.3d 648, 652 (Ky.2011) (citation and internal quotations omitted).

**17.** *Bard,* 359 S.W.3d at 7 (*citing* 46 AM.JUR 2D JUDGMENTS § 139).

**18.** *Buchanan v. West Ky. Coal Co.,* 218 Ky. 259, 291 S.W. 32, 35 (1927) (citation and internal quotations omitted).

**19.** *Machniak,* 351 S.W.3d at 652–53 (citations omitted).

**20.** *Id.* at 654; *See also Viers v. Commonwealth,* 52 S.W.3d 527, 528–29 (Ky.2001).

**21.** *Buchanan,* 291 S.W. at 35.

**22.** *Bard,* 359 S.W.3d at 7 (citation omitted).

credit in the oral judgment. But we do not know if the trial court relied on inaccurate information, in which case it is a judicial error, or if the court erred when transcribing the numbers, which qualifies as a clerical error.

This situation is similar to that in *Wides v. Wides*,[23] which also involved a silent record. In that case, a discrepancy occurred between the terms in the parties' separation agreement and the terms in the final judgment, which meant to formalize the separation agreement. The record was not clear as to whether the judge intended the discrepancy between the separation agreement and the judgment, or whether the discrepancy was the product of an unexplained mistake. The Court held that in the absence of a clear explanation, "the presumption is that this is the correct judgment of the court."[24] And "[e]ven if the judgment was not what the judge intended to be entered, still it cannot be reached and avoided in this way."[25] So the Court held that even if an error did occur in the judgment, it was a judicial error.

■■■■ We likewise hold that because there is no indication in the record about how the error in jail-time credit came to be, the presumption is that the written judgment's custody credit award is the court's judicial determination on the subject. RCr 10.10 is an exception to the general rule that the trial court lacks power to amend a judgment ten days after the judgment's entry. This exception should

only apply where the circumstances are clear that the mistake is a clerical error.

So any error in the amount of jail-time credit that the trial court awarded Fagan in the written judgment must be considered a judicial error. And the trial court lacked the power to amend the judgment more than ten days after its entry.[26] Accordingly, we vacate the trial court's amended judgment and remand to the trial court to reinstate the judgment as originally entered.

### C. The $100,000 Statutory Cap is not Applicable to Fagan's Restitution Order.

■■■■ Before sentencing Fagan, the trial court held a restitution hearing. After reviewing the victims' damages, the trial court ordered Fagan to pay a total of $181,264 in restitution. Of that amount, the trial court awarded $20,956 to First Union, $60,299 to NRE, and $100,000 to GATX. Fagan argues that the trial court erred in its restitution order because the total amount exceeded $100,000, violating KRS 533.030(3).[27] We disagree because the statutory cap is not applicable to the trial court's restitution order.

KRS 533.030(3) provides, in pertinent part,

**When imposing a sentence of probation or conditional discharge** in a case where a victim of a crime has suffered monetary damage as a result of the crime due to his property having been converted, stolen, or unlawfully obtained ... [r]estitution shall be ordered in the

---

**23.** 300 Ky. 344, 188 S.W.2d 471 (1945).

**24.** *Id.* at 349, 188 S.W.2d 471.

**25.** *Id.* (citations omitted).

**26.** We note that if the Commonwealth believed the court's jail-time credit calculation was erroneous, it could have timely raised

that issue on direct appeal. *Winstead,* 327 S.W.3d at 485.

**27.** This error was not preserved for appellate review, but we will review it because it is a sentencing issue. *Jones v. Commonwealth,* 2010–SC–000328–MR, 2011 WL 6543010 at *7 (Ky. Dec. 22, 2011).

full amount of the damages, unless the damages exceed one hundred thousand dollars ($100,000).... [28]

This Court recently held that "the $100,000.00 limitation applies only to restitution that is imposed along with a sentence of probation or conditional discharge." [29] The trial court did not sentence Fagan to probation or conditional discharge. So the $100,000 cap in KRS 533.030(3) is not applicable to the trial court's imposition of restitution.

### III. CONCLUSION.

For the foregoing reasons, we affirm Fagan's convictions and sentence. But we vacate the trial court's amended judgment and remand to the trial court to reinstate the final judgment as originally entered.

All sitting. All concur.